The Hon. Robert C. BUCKLEY, and the Illinois Judges Association, intervenor, Plaintiffs,

v.

The ILLINOIS JUDICIAL INQUIRY BOARD, and its members, not individually, but in their capacity as members of the Board, namely, Tyrone C. Fahner, Joel D. Gingis, the Honorable Harold L. Jensen, Joyce E. Moran, Patrick F. Mudron, William A. O'Connor, Frances K. Zemans, Mary Sue Hub; and Ray F. Breen, not individually, but as Executive Director of the Illinois Judicial Inquiry Board; and the Illinois Courts Commission, and William Madden, not individually, but in his capacity as Secretary of the Illinois Courts Commission, Defendants.

84

Anthony L. YOUNG, Plaintiff,

v.

James Harold BANDY, John P. Clarke, Eldridge T. Freeman, Jr., David M. Hartigan, Watts C. Johnson, and Carole R. Nolan, in their official capacities as members of the Attorney Registration and Disciplinary Commission; Tyrone C. Fahner, Joel D. Gingis, the Honorable Harold L. Jensen, Joyce E. Moran, Patrick F. Mudron, William A. O'Connor, Frances K. Zemans, and Mary Sue Hub, in their official capacities as members of the Judicial Inquiry Board; and Ray F. Breen, in his official capacity as the Executive Director of the Judicial Inquiry Board, Defendants.

Nos. 91 C 7635, 92 C 1889.

United States District Court,
N.D. Illinois, E.D.

Aug. 20, 1992.

William J. Harte, David J. Walker, Stephen L. Garcia, William J. Harte, Ltd., Chicago, Ill., for plaintiff Robert C. Buckley.

Candace Jean Fabri, John H. Ehrlich, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendant Ill. Judicial Inquiry Bd.

Thomas A. Ioppolo, Ill. Atty. Gen. Office, Candace Jean Fabri, John H. Ehrlich, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendant Ill. Courts Com'n.

Jane M. Whicher, Harvey Michael Grossman, Roger Baldwin Foundation of ACLU, Inc., Chicago, Ill., for plaintiff Anthony L. Young.

James John Grogan, James Scott Renfroe, Ill. Atty. Registration & Disciplinary Com'n, Chicago, Ill., for defendants James Harold Bandy, John P. Clarke, Eldridge T. Freeman, Jr., David M. Hartigan, Watts C. Johnson, and Carole R. Nolan.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

These cases were filed by two candidates for judicial office in the State of Illinois. The cases were consolidated because both plaintiffs challenge the constitutionality of Rule 67(B)(1)(c) ("Rule 67(B)(1)(c)" or the "Rule") of the Illinois Code of Judicial Conduct (the "Code"). ILL.REV.STAT. ch. 110A, ¶ 67(B)(1)(c).[1] Plaintiff Robert C. Buckley ("Justice Buckley") is a Justice of the Illinois Appellate Court. In 1990 Justice Buckley campaigned for election to the Illinois Supreme Court. The defendant Illinois Judicial Inquiry Board ("JIB") brought a complaint against Justice Buckley before the Illinois Courts Commission ("ICC") alleging that some of Justice Buckley's campaign statements violated Rule 67(B)(1)(c). Justice Buckley's defense was that Rule 67(B)(1)(c) is unconstitutional under both the United States Constitution and Illinois Constitution. The ICC found Justice Buckley's statements a violation of Rule 67(B)(1)(c) but declined to impose sanctions.[2] Plaintiff Anthony L. Young ("Young") is an attorney and a member of the Illinois General Assembly. Young is currently a candidate for Judge of the Circuit Court of Cook County. Young's complaint states that he wishes to make statements which presumably would violate Rule 67(B)(1)(c). Young asserts that he has refrained from making these campaign statements so as to avoid sanctions under Rule 67(B)(1)(c). Thus, Young believes his rights under the federal and state constitutions are being violated. Young has sued the JIB and the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). Both plaintiffs seek declaratory and injunctive relief, which would in effect require a ruling by this court finding Rule 67(B)(1)(c) unconstitutional either on its face or in its application to plaintiffs, and an order enjoining defendants from enforcing the Rule. The Illinois Judges Association ("IJA") has moved to intervene on behalf of its members as plaintiff in the Justice Buckley case (No. 91 C 7635).[3] The

1. Unless otherwise noted, the statutes, constitutions and rules cited are those currently in effect.

2. *See In re Justice Robert C. Buckley of the Illinois Appellate Court*, No. 91–CC–1, at 4–5 (October 25, 1991).

3. The IJA's motion to intervene was referred to Magistrate Judge Weisberg with the other motions in this case. Magistrate Judge Weisberg granted the IJA's motion, although he later found that the IJA's claim lacked a genuine case or controversy. None of the parties opposed the IJA's motion to intervene nor have any of the parties objected to the Magistrate Judge's ruling.

IJA also seeks a declaratory judgment that Rule 67(B)(1)(c) is unconstitutional.

Plaintiffs have filed motions for summary judgment.[4] The motions were referred to Magistrate Judge Weisberg for a Report and Recommendation ("Report"). The Magistrate Judge has issued his Report. *See Buckley v. Illinois Judicial Inquiry Board, et al.,* Nos. 91 C 7635 & 92 C 1889, slip op. (April 23, 1992) (Weisberg, M.J.). The Magistrate Judge recommends denying plaintiffs' motions for summary judgment and recommends this court *sua sponte* grant summary judgment for defendants. Plaintiffs have filed timely objections to the Report. FED.R.CIV.P. 72(b). For the reasons discussed below, the court adopts the Magistrate Judge's Report and Recommendation, except that the court does not adopt the Report's conclusion regarding the court's jurisdiction over the IJA's intervening complaint. Accordingly, the court denies the plaintiffs' motions for summary judgment and *sua sponte* grants defendants summary judgment.[5]

The facts and procedural history of these cases are discussed by Magistrate Judge Weisberg. *See* Report, at 2–9. As the Magistrate Judge correctly notes: "There are no disputed facts and the court has been asked to determine the constitutionality of [Rule 67(B)(1)(c)] as a matter of law." The parties do not object to this characterization. Therefore, we will not set forth the facts except as needed to support our analysis.

## I. DISCUSSION

### A. Standard on Review

A district court judge is required to make a *de novo* review of any portion of a magistrate judge's recommendation on a dispositive motion. 28 U.S.C. § 636(b); FED. R.CIV.P. 72(b). Plaintiffs object to almost every legal conclusion made by the Magistrate Judge. Our review, then, is not limited to a single legal issue but extends to the entirety of plaintiffs' motions for summary judgment. A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). A genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party to support a jury verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). If the evidence presented by the non-movant is merely colorable or is not sufficiently probative, summary judgment is appropriate. *Wolf v. Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). The parties submit that this case does not involve disputed issues of material fact. Hence, the court's focus will be on which party is entitled to judgment as a matter of law.

### B. Rule 67(B)(1)(c) and its application to Plaintiffs—Standing and Case and Controversy.

Any discussion of these cases must begin with the regulation involved. Rule 67(B)(1)(c) states:

A candidate, including an incumbent judge, for a judicial office filled by election or retention

\* \* \* \* \* \*

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or

---

4. Justice Buckley has filed a motion to dismiss which we discuss *infra* at Part II.

5. The Magistrate Judge's Report and Recommendation is attached as an Appendix.

misrepresent his identity, qualifications, present position, or other fact; provided, however, that he may announce his views on measures to improve the law, the legal system, or the administration of justice, if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him.

Rule 67(B)(1)(c) is enforced by two public agencies depending upon the position of the candidate involved. Against a sitting judge, such as Justice Buckley, Rule 67(B)(1)(c) is enforced by the JIB. The JIB brings charges of misconduct before the ICC, which is empowered to discipline and remove judges from office. ILL. CONST. art. VI, § 15(b)–(g). The ARDC enforces Rule 67(B)(1)(c) against a lawyer, such as Young, who is not a sitting judge running for judicial office.

Rule 67(B)(1)(c) may be divided into four sub-parts.[6] The opening clause of the Rule prohibits a candidate from pledging or promising specific conduct if elected, except that the candidate may promise "faithful and impartial performance" of his duties. We will refer to this clause as the pledge or promise provision. The second clause of the Rule prohibits a candidate from announcing views on disputed legal or political issues; we will refer to this clause as the disputed issues provision. The third clause prohibits a candidate from misrepresenting his[7] identity, qualifications or other facts. This provision will not be discussed as the plaintiffs have not raised any constitutional objections to this portion of the Rule. The last clause contains a proviso that a candidate may announce his views on measures to improve the law, the legal system, or the administration of justice so

long as the candidate does not, by his announcement, cast doubt on his capacity to be impartial on any issue which may be presented to him while in office. We will refer to this clause as the proviso. The Magistrate Judge considered the constitutionality of each provision separately, which is as it should be. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 506–07, 105 S.Ct. 2794, 2803–04, 86 L.Ed.2d 394 (1985).

### 1. *Application of the Rule to Justice Buckley.*

The JIB's complaint against Justice Buckley arises out of campaign materials distributed by Justice Buckley which stated that he had never authored an opinion reversing a rape conviction.[8] The JIB considered this an implicit pledge or promise to hold rape defendants to a higher standard of proof.[9] The ICC agreed but declined to sanction Justice Buckley because the statement, while "a violation of the Code, ... is insubstantial, insignificant, and does not warrant the imposition of a reprimand." *In re Justice Robert C. Buckley of the Illinois Appellate Court*, No. 91–CC–1, slip op. at 4–5 (Oct. 25, 1991).[10] The ICC's opinion does not address Justice Buckley's constitutional defenses. The ICC denied the JIB's motion for reconsideration.

Justice Buckley sued in this court seeking a determination of the Rule's constitutionality and an injunction against its application. The Magistrate Judge found Justice Buckley had standing, a finding the parties do not dispute. *See* Report, at 9. The Magistrate Judge found Justice Buckley had a live case or controversy as to the pledge or promise provision, but did not have a live case or controversy as to the

---

**6.** The Magistrate Judge discusses this partition of the Rule at page 3 of his Report. Much of this court's analysis is drawn from Magistrate Judge Weisberg's analysis.

**7.** We use the male gender pronoun only because both of the plaintiffs here happen to be male. Obviously, our discussion applies equally to male and female candidates for judicial office.

**8.** The statement was made in some campaign literature approved by Justice Buckley. It was later reported in several newspaper articles.

**9.** There is, of course, no evidence that Justice Buckley has ever done so.

**10.** The ICC also found that Justice Buckley's statements violated Supreme Court Rules 61 and 62A. ILL.REV.STAT. ch. 110A, ¶¶ 61, 62A. These rules require that a judge uphold the integrity and independence of the judiciary and avoid conduct which would reduce the public's confidence, the integrity and impartiality of the judiciary.

disputed issue provision. Justice Buckley contends that continued enforcement of Rule 67(B)(1)(c) "will ... deprive ... [him] of the opportunity. to discuss issues [he] addressed as an Appellate Court Justice as they relate to [his] qualifications to sit on the Supreme Court of Illinois." Plaintiff's Motion for Summary Judgment, Affidavit of Robert C. Buckley, ¶ 9. The Magistrate Judge concluded, however, that "[s]ince he has never been prosecuted for violating the disputed issues provision and Buckley has not identified any issue he wants to discuss, the record does not show 'an actual or imminent application of [that provision] sufficient to present the constitutional issues in "clean-cut and concrete form"'. *Renne v. Geary*, [— U.S. —, —] 111 S.Ct. [2331], 2339 [115 L.Ed.2d 288 (1991)]." Report, at 12–13.

■■■ A federal court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546, 106 S.Ct. 1326, 1333, 89 L.Ed.2d 501, *reh'g denied*, 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986); *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226, 7 S.Ct. 552, 552, 30 L.Ed. 623 (1887). Article III of the Constitution limits the "judicial power" of a federal court to "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982).

The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments ..., 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.' *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 343, 12 S.Ct. 400, 401, 36 L.Ed. 176 ... (1892).

*Valley Forge*, 454 U.S. at 471, 102 S.Ct. at 757. Thus, Article III requires a plaintiff to have "standing," see *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45

L.Ed.2d 343 (1975), and an "actual injury redressable by the court," see *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). *See also Valley Forge*, 454 U.S. at 471–72, 102 S.Ct. at 757–58. One who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of a the statute's operation or enforcement. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

When [a] plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 [93 S.Ct. 739, 745, 35 L.Ed.2d 201] ... (1973). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 [91 S.Ct. 746, 749, 27 L.Ed.2d 669] ... (1971); *Golden v. Zwickler*, 394 U.S. 103 [89 S.Ct. 956, 22 L.Ed.2d 113] ... (1969).

*Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2309.

■■■ Moreover, as a matter of prudential concern, federal courts require a plaintiff to assert only his own rights and interests and not base his claim on the rights and interests of third parties. *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205. A plaintiff's complaint must fall within " 'the zone of interest to be protected or regulated by the statute or constitutional guarantee in question.' *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 [90 S.Ct. 827, 829, 25 L.Ed.2d 184] ... (1970)." *Valley Forge*, 454 U.S. at 475, 102 S.Ct. at 760. Finally, federal courts must "refrain ... from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60. This having been said, "the usual rule that the courts should avoid

constitutional adjudication whenever possible carries less weight in the First Amendment context." *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 634 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (citing *Secretary of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984)).[11]

■ Justice Buckley objects to the Magistrate Judge's finding that he lacks a case or controversy with respect to the disputed issue provision. Justice Buckley notes that *"it is exactly those issues which have come before him* as an Appellate Court Justice (and which are likely to come before him in the future in his role as either an Appellate Court or Supreme Court Justice) which he has specifically identified as issues which he wishes to address in his campaign literature." Plaintiff Buckley's Objections to Magistrate Judge's Report and Recommendation on Plaintiffs' Motions for Summary Judgment, at 4 (emphasis original) [hereinafter Buckley Objections]. We think the Magistrate Judge has the better of this argument. That the JIB chose not to charge Justice Buckley under the disputed issue provisions is not dispositive. The JIB has shown no reluctance in enforcing the provisions of Rule 67(B)(1)(c). Nonetheless, Justice Buckley has not specifically identified what issues he wishes to discuss, which would place him within the ambit of the Rule. Justice Buckley points to campaign literature which states that "he 'consistently rules to protect the civil rights of working people on key issues of health, housing and employment,' and 'consistently rules to protect and expand womens' rights in the areas of health, domestic relations and sexual assault'...." Buckley Objections, at 4. But these statements are not disputed issues so much as statements in the same vein as the rape opinion pledge. These statements implicitly indicate, if they indicate anything at all, that Justice Buckley will continue to rule in the manner suggested. The statements do not announce views on disputed legal or political issues and are not sufficient to present the constitutional issues in "clean-cut and concrete form". Justice Buckley's objection is overruled.

### 2. Application of the Rule to Young.

■ Young is in somewhat the opposite position as Justice Buckley. Young is a candidate for judge on the Seventh Subcircuit of the Circuit Court of Cook County. The general election is scheduled for November 3, 1992. Young states: "During the time period of the general election campaign, I wish to express my view on the issues which I believe are important to the people and voters of Illinois. These issues include, without limitation: capital punishment, abortion, the state's budget, and public school education." Plaintiff's Motion for Summary Judgment, Exhibit 1, Declaration of Anthony L. Young, at ¶ 4 [hereinafter Young Affidavit]. Young also states that he wishes to "pledge to voters that [he] will try to eliminate delays in the judicial process and that [he] will seek to ensure that everyone is fully able to understand the judicial proceedings in which they are involved." Young Affidavit, at ¶ 6. Young has not yet made any such statements and therefore has not provided any basis for ARDC intervention. However, Young states that he fears that if he expresses his views, he will be subject to sanction under Rule 67(B)(1)(c). Young Affidavit, ¶ 5.

As with Justice Buckley, the Magistrate Judge found Young had standing to sue, and the parties have not disputed this finding. *See* Report, at 9. Converse to the finding in regards Justice Buckley, however, the Magistrate Judge found Young had a live case or controversy as to the disputed issue provision, but lacked a live case or controversy as to the pledge or promise provision. *See* Report, at 14–16. Young objects to the Magistrate Judge's finding that he lacks a live case or controversy as to the pledge or promise provision. *See* Objections of Plaintiff Anthony L. Young to Magistrate's Report and Recommenda-

---

**11.** The combination of these standing and prudential questions is normally termed "justiciability." *See Renne,* — U.S. at —, 111 S.Ct. at 2338.

tion, at 2–5 [hereinafter Young Objections]. Magistrate Judge Weisberg concluded Young lacked a live case and controversy as to the pledge or promise provision because Young's statements were "entirely consistent with" the single pledge allowed by Rule 67(B)(1)(c): a candidate may pledge or promise to give "faithful and impartial performance of the duties of office." Report, at 15. We agree with the Magistrate Judge that Young's statements are compatible with the pledge or promise provision. Further, the court also believes Young's statements come within the proviso of Rule 67(B)(1)(c). Young's actions to reduce delay and ensure that litigants understand the judicial process would essentially promote fairness and help to avoid any appearance of impartiality, goals explicitly authorized by the pledge or promise provision. Moreover, Young's actions would certainly be authorized by Rule 67(B)(1)(c)'s proviso that a candidate may "announce his view on measures to improve the law, the legal system, or the administration of justice...." The Magistrate Judge correctly concluded that the cases cited by Young did not substantiate a credible threat of prosecution should Young make the statements suggested. Young's statement that he has refrained from making statements, and therefore, his speech has been "chilled" is too speculative to create a "real, earnest and vital controversy" such that this court would have jurisdiction over the claim. Young's objection is overruled.

### 3. Application of the Rule to the IJA.

■ The Magistrate Judge concluded that although the IJA had standing to sue on behalf of its members, the IJA's complaint engendered no live case or controversy as required for our subject matter jurisdiction. The IJA objects to this finding on two grounds. First, the Magistrate Judge mistakenly concluded "[t]he IJA does not allege that any of its members have been prosecuted for violations of the Rule." Report, at 13. Justice Buckley is a member of the IJA. Hence, the IJA's statement that its members have been subject to prosecution under Rule 67(B)(1)(c) is true. IJA's Amended Intervening Complaint, at ¶ 14. Consequently, the IJA's complaint presents a live case or controversy, at least as to the pledge or promise provision. As to the disputed issue provision, the IJA states its members wish to disseminate information during campaigns for election or retention which would "make known their experience, qualifications, basic judicial philosophy and *other important information* ...." Statement of Material Facts Pursuant to Rule 12(m) in Support of Intervening Plaintiff's Motion for Summary Judgment, at ¶ 13 [hereinafter IJA's Rule 12(m) Statement]. The Magistrate Judge concluded that this statement was insufficient to satisfy the case and controversy requirement. The IJA represents the interests of over 800 Illinois judges, all of whom are subject to Rule 67(B)(1)(c). We cannot say, especially given the somewhat relaxed standing requirement noted above in *Sequoia Books*, that the IJA's complaint presents no live case or controversy requirement as to the disputed issue provision. While the IJA's complaint may be somewhat ambiguous, the court believes it is sufficient to convey jurisdiction over the dispute raised.[12] The IJA's objection is sustained.

---

12. The IJA also bases its objection to the Magistrate Judge's justiciability analysis on its "inability to divine the lawful from the unlawful under either a 'plain English' or narrowed view of the rule...." Illinois Judges Association's Objections to the Magistrate's Report and Recommendation on Plaintiffs' Motions for Summary Judgment, at 3 [hereinafter IJA Objections]. The IJA confuses justiciability with an attack on the rule on the basis of overbreadth. These issues are easily confused. *See Secretary of Maryland v. Joseph H. Munson, Inc.*, 467 U.S. 947, 970–75, 104 S.Ct. 2839, 2854–57, 81 L.Ed.2d 786 (1984) (Stevens, J., concurring). Professors Nowak and Rotunda state it succinctly:

[I]t is not precise to think of the overbreadth problem as a form of standing or justiciability issue. Rather, one should recognize that when the Court is asked to strike a law on its face as being overbroad, the individual is asserting that no one in our society—including persons whose speech is unprotected by the first amendment—can be subjected to punishment under a statute so sweeping that it could include both protected and unprotected speech within its scope. If the Court believes that the statute is so sweeping that it would deter persons from engaging in protected speech, or that the state may be used on an

The IJA's complaint raises a live case or controversy concerning the JIB's enforcement of Rule 67(B)(1)(c).

### C. Constitutional Challenges

Having disposed of the plaintiffs' objections to the Magistrate Judge's conclusions regarding jurisdiction and justiciability, we now turn to the constitutional challenges to Rule 67(B)(1)(c). The First Amendment guarantees that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. The First Amendment applies to the states through the Fourteenth Amendment. *Edwards v. South Carolina*, 372 U.S. 229, 237–38, 83 S.Ct. 680, 684–85, 9 L.Ed.2d 697 (1963). Speech uttered as part of a political campaign for election to office is unquestionably protected by the First Amendment. *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 1020, 103 L.Ed.2d 271 (1989); *Stretton v. Disciplinary Bd. of Sup. Ct. of Pa.*, 944 F.2d 137, 141 (3d Cir.1991).

> The candidate, no less than any other person, has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day.

*Buckley v. Valeo*, 424 U.S. 1, 52–53, 96 S.Ct. 612, 650–51, 46 L.Ed.2d 659 (1976) (per curiam); *see also Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971) (the First amendment has its fullest and most urgent application to speech uttered during campaign for political office).

 Political speech, even that uttered by a candidate in an election, is not absolutely free of restriction by the state. *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973) (upholding Hatch Act prohibiting federal employees from becoming a partisan candidate for public office); *Broadrick v. Oklahoma*, 413 U.S. 601, 616–17, 93 S.Ct. 2908, 2918–19, 37 L.Ed.2d 830 (1973) (upholding prohibition on state employees becoming candidates for paid public office); *Morial v. Judiciary Comm'n of Louisiana*, 565 F.2d 295, 306–07 (5th Cir.1977), *cert. denied*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978) (upholding Louisiana statute and judicial canon of conduct requiring state judges to resign their offices prior to becoming candidates for non-judicial office). But state restrictions on political speech are subject to exacting scrutiny by the courts. A restriction on a candidate's right to speak in the context of an election must overcome several hurdles. First, the restriction on First Amendment rights must be balanced against a state's legitimate and compelling interest in regulating the activity. Second, the restriction may not be so overbroad so as to prohibit protected speech. Last, the restriction may not be so vague as to not provide notice to persons that their conduct violates the restriction or to not provide a sufficiently clear standard to allow enforcement on a non-selective basis. Not surprisingly, the plaintiffs' objections center on these requirements and thus require discussion of each.[13]

---

arbitrary basis against political dissenters, the Court will strike the law as overbroad. If the Court believes that there is little chance that the statute will deter constitutionally protected speech, or will be used in a selective manner to punish dissenters, it will uphold the law and allow it to be applied on a "case-by-case" basis.
John E. Nowak & Ronald D. Rotunda, Constitutional Law § 16.8, at 947 (1991) (footnote omitted). We discuss the plaintiffs' challenge to Rule

67(B)(1)(c) on the basis of overbreadth *infra* at section II.C.2.

**13.** The IJA raises one objection which does not fit within the First Amendment analysis which follows. Without citation to authority, the IJA states that Magistrate Judge Weisberg was predisposed against the IJA's position. With bare reference to the Report, the IJA states the Magistrate Judge "disapproves of elections for judicial office, and particularly objects to candidates who actively campaign for judicial office.

### 1. Regulating Speech—Necessity of a Compelling State Interest

When a state regulation implicates First Amendment rights, a court must balance those interests against the state's legitimate interest in regulating the activity in question. *Gentile v. State Bar of Nevada,* — U.S. ——, 111 S.Ct. 2720, 2745, 115 L.Ed.2d 888 (1991). Because Rule 67(B)(1)(c) restricts political speech, "achieving a balance requires the state to establish a compelling interest and [requires] the restriction to be narrowly tailored to serve that interest." *Stretton,* 944 F.2d at 141 (citing *Brown v. Hartlage,* 456 U.S. 45, 53, 102 S.Ct. 1523, 1528, 71 L.Ed.2d 732 (1982)).

The Magistrate Judge identified several interests advanced by Rule 67(B)(1)(c): the right of litigants to an impartial judiciary; the right of litigants to an uninterested judiciary (in the sense that a judge does not owe financial or political allegiance to any outside concern). Report, at 18. Hence, the Magistrate Judge concluded that the State of Illinois has a compelling interest in regulating judicial elections so as to maintain "public confidence in judicial impartiality and integrity, since the perception of judicial partiality and corruption, whether true or not, breeds disrespect for the law and extralegal self-help." Report, at 18. The plaintiffs do not object to this portion of the Magistrate Judge's analysis. The plaintiffs do state that there are other compelling interests which should be considered and balanced with those stated in the Report. Justice Buckley, citing *American Civil Liberties Union, Inc. v. The Florida Bar,* 744 F.Supp. 1094 (N.D.Fla.1990) among other authorities, argues that the state must protect the rights of voters to make "well-informed and well-reasoned voting decisions." Buckley Objections, at 7. Young suggests that the Magistrate Judge overstates the perils of leaving un-

protected the public perception of judicial impartiality and integrity. Young Objections, at 17–19 (citing *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)). These concerns were raised before Magistrate Judge Weisberg and were eloquently addressed in his Report. *See* Report, at 23. Justice Buckley's and Young's positions ignore the historical and practical difference between the judiciary and the other branches of government. Candidates for office in the executive or legislative branches of government represent people and interests markedly different from those embodied by a judicial office. The candidate for legislature who makes a promise which is later broken may be (and perhaps should be) turned out by the voters at the next election. "By contrast, the judicial system is based on the concept of individualized decisions on challenged conduct and interpretation of law enacted by the other branches of government." *Stretton,* 944 F.2d at 142. When making a decision resolving a dispute between parties to a lawsuit, a judge cannot allow himself to be swayed by public opinion on a disputed issue or to be controlled by a promise made to the electorate when campaigning for office. Our system of dispute resolution requires a judge to research and examine the precedents, apply the facts as presented by the lawsuit and then render an independent and objective decision.

The plaintiffs' citations do not support a contrary conclusion. In *Grace,* the Supreme Court held unconstitutional a statute prohibiting picketing and leafletting in or on the grounds of the United States Supreme Court building. The Court rejected the government's argument that the statute was justified on the grounds that "it [would] appear to the public that the Supreme Court is subject to outside influence or that picketing or marching, singly or in groups, is an acceptable or proper way of

---

This predisposition colors his assessment of the important First Amendment values compromised by the rule and causes him to reach erroneous conclusions of law." IJA Objections, at 4. The court considers this objection totally without support. Nowhere in Magistrate Judge Weisberg's scholarly opinion is there any hint of

predisposition or bias. The Report's analysis is extensive and balanced and thoroughly discusses the parties' relative positions. That the IJA makes such a suggestion so cavalierly leads this court to conclude that it is the IJA which has lost its balanced perspective. The IJA's objection, in this regard, is overruled.

appealing to or influencing the Supreme Court." *Grace*, 461 U.S. at 183, 103 S.Ct. at 1709. The Court "seriously doubted" that picketing before the court building was any different from other forms of protected political expression and that, in any case, such picketing would not raise any public perception of influence on the Court. *Grace*, 461 U.S. at 183, 103 S.Ct. at 1709. The instant case is, of course, readily distinguishable. Here, we are concerned with the very real possibility that a promise or announcement of views by a judicial candidate will prevent or influence the resolution of a case before the judge. The Court distinctly recognized in *Grace:*

> [T]he federal courts represent an independent branch of the Government and ... their decisionmaking process is different from those of the other branches. Court decisions are made on the record before them and in accordance with the applicable law. The views of the parties and of others are to be presented by briefs and oral argument. Courts are not subject to lobbying, judges do not entertain visitors in their chambers for the purpose of urging that cases be resolved one way or another, and they do not and should not respond to parades, picketing, or pressure groups.

*Grace*, 461 U.S. at 183, 103 S.Ct. at 1709. Justice Buckley's citation to *American Civil Liberties Union v. The Florida Bar*

is equally unpersuasive. The district court in that case declared unconstitutional a judicial canon on campaign conduct identical to Rule 67(B)(1)(c) except for one important point: Rule 67(B)(1)(c)'s proviso allows a judicial candidate to announce his views on measures to improve the law, the legal system, or the administration of justice without fear of sanction. The Florida canon did not contain a similar proviso. The Florida canon "proscribed announcements on almost every issue that might be of interest to the public and the candidates in a judicial race," such that the district court found it was not the least restrictive means of effectively ensuring a fair and impartial judiciary. *ACLU v. The Florida Bar*, 744 F.Supp. at 1098–99. Clearly, Rule 67(B)(1)(c) is not an absolute prohibition on a judicial candidate's political speech. The Rule allows discussion on all the issues listed in the proviso. Moreover, when the Rule is subject to the narrow construction advanced by the Magistrate Judge, a subject which the court will more fully discuss below, it is clear that the Rule's disputed issue provision is to be applied only to statements concerning issues likely to come before the judge.[14] We conclude, therefore, the plaintiffs' objections to the Magistrate Judge's compelling interest analysis are without merit. The objections are overruled.

---

**14.** Other cases cited by the plaintiffs are also unpersuasive. *Ackerson v. Kentucky Judicial Retirement & Removal Comm'n*, 776 F.Supp. 309 (W.D.Ky.1991) is similar to *ACLU v. The Florida Bar* in that the Kentucky judicial canon challenged is almost identical to Rule 67(B)(1)(c) except for the proviso. Thus, the district court found that "constraint on Ackerson's campaign speech on the subject of court administration is an unnecessary abridgement of his First Amendment rights." *Ackerson*, 776 F.Supp. at 314. Under Rule 67(B)(1)(c), announcements concerning the legal system and the administration of justice are specifically authorized by the proviso. Even though the *Ackerson* court enjoined the enforcement of the Kentucky judicial canon on First Amendment grounds, much of the district court's analysis is in line with that of this court. The *Ackerson* court recognized that, in regards to the pledge or promise provision,

> this constraint on First Amendment speech is permissible and proper when balanced

against the necessity of maintaining the impartiality of the legal process. This interest is simply too great to allow judicial campaigns to degenerate into a contest of which candidate can make more commitments to the electorate on legal issues likely to come before him or her.

*Ackerson*, 776 F.Supp. at 315.

In the same way, the judicial canon challenged in *Beshear v. Butt*, 773 F.Supp. 1229 (E.D.Ark.1991) also differed from Rule 67(B)(1)(c) in that the Arkansas provision did not contain a proviso. Perhaps a more compelling reason for not relying on *Beshear* is that it was recently reversed by the Eighth Circuit Court of Appeals on procedural grounds. *See Beshear v. Butt*, 966 F.2d 1458 (8th Cir.1992) (reversing district court and remanding). *See also I.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953, 956 (Ky.1991) (holding canon which prohibits all speech during campaign unconstitutional).

### 2. Overbreadth, Nexus and the Narrow Construction

█ Perhaps the plaintiffs' most strenuous objections are directed at the Magistrate Judge's application of a narrow construction of Rule 67(B)(1)(c).

When a statute or regulation is challenged, it should be interpreted to avoid constitutional difficulties. "[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. De Bartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 [108 S.Ct. 1392, 1397, 99 L.Ed.2d 645] ... (1988) (quoting *Hooper v. California,* 155 U.S. 648, 657 [15 S.Ct. 207, 211, 39 L.Ed. 297] ... (1895)); *Frisby v. Schultz,* 487 U.S. 474, 483 [108 S.Ct. 2495, 2501, 101 L.Ed.2d 420] ... (1988). In fact, courts routinely narrow statutes to avoid a potentially overbroad reach. *Osborne v. Ohio,* 495 U.S. 103 [110 S.Ct. 1691, 109 L.Ed.2d 98] ... (1990).

*Stretton,* 944 F.2d at 144; *see also Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988); *United States v. Marshall,* 908 F.2d 1312, 1318 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991) (a preference for giving statutes a constitutional meaning is a reason to construe, not to rewrite or "improve"). Rule 67(B)(1)(c) has not been the subject of construction under the First Amendment by either the ICC or the Illinois Supreme Court.[15] We are required to follow whatever construction the Illinois Supreme Court would put on the rule. Similar to this court, the Illinois Supreme Court, when examining an act for constitutional infirmity, will seek a construction which preserves constitutionality. *People v. Anderson,* 148 Ill.2d 15, 169 Ill.Dec. 288, 292, 591 N.E.2d 461, 465 (1992), *petition*

for *cert. filed* (July 14, 1992); *Continental Ill. Nat'l Bank & Trust Co. v. Illinois State Toll Highway Authority Comm'n,* 42 Ill.2d 385, 251 N.E.2d 253, 257 (1969). The Magistrate Judge concluded that if the Illinois Supreme Court was called upon to construe Rule 67(B)(1)(c), it would limit the disputed issue provision to issues likely to come before the court. Report, at 30. All three plaintiffs object to this construction. The plaintiffs argue that the Magistrate Judge's construction is "strained" or an "invented concept." *See* IJA Objections, at 6; Young Objections, at 7. The plaintiffs also attack the Magistrate Judge's reliance on the Third Circuit's construction of a rule similar to Rule 67(B)(1)(c) in the *Stretton* decision. As explained below, none of these objections have merit.

For several reasons, the court agrees with the Magistrate Judge that Rule 67(B)(1)(c) is "readily susceptible" to a narrow construction limiting its scope to statements made on issues which are likely to come before the judicial candidate when sitting as a judge. First, the structure of Rule 67(B)(1)(c) itself requires this narrow construction. The trailing language of the proviso, that a candidate may announce his position on certain issues of court administration "if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him[,]" logically applies to the disputed issue provision. It would make no sense, and clearly the Illinois Supreme Court in enacting the Rule did not mean, for a judicial candidate to be restricted from voicing his views on a disputed issue which bore no likelihood of ever being presented to him in the context of a lawsuit. Similarly, it is unlikely that the Rule is meant to restrict a candidate from pledging to increase the efficiency of the court system. Plaintiffs have not ad-

---

**15.** The Magistrate Judge notes the irregularity with which the Illinois Judicial Code of Conduct is interpreted. *See* Report, at 29–30. The ICC is empowered to construe the rules but lacks competency to apply a constitutional standard. *People ex rel. Harrod v. Illinois Courts Comm'n,* 69 Ill.2d 445, 14 Ill.Dec. 248, 260–61, 372 N.E.2d 53, 65–66 (1977). The Magistrate Judge correctly

notes however, that the Illinois Supreme Court may, by writ of prohibition, restrain the ICC's rulings within constitutional bounds. Given the Illinois Supreme Court's practice of construing a statute to maintain its constitutionality, it is likely that this process would result in a construction of Rule 67(B)(1)(c) preserving its constitutionality.

vanced any reasons which would persuade this court to the contrary.

Second, the structure of the Illinois Code of Judicial Conduct supports a construction which requires the highest degree of judicial impartiality and integrity. Rule 61 of the Code requires that "[t]he provisions of this Code should be construed and applied to further [the] objective" of upholding "the integrity and independence of the judiciary." ILL.REV.STAT. ch. 110A, ¶ 61. Other portions of the Code are consistent with this purpose. For instance, Rule 63 states:

**A. Adjudicative Responsibilities**

(1) A judge should be faithful to the law and maintain professional competence in it. *He should be unswayed by partisan interest, public clamor, or fear of criticism.*

\*　　\*　　\*　　\*　　\*　　\*

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, shall not permit *ex parte* or other communications *concerning pending or impending proceedings.*

\*　　\*　　\*　　\*　　\*　　\*

(6) *A judge should abstain from public comment about a pending or impending proceeding in any court . . . .* This subsection does not prohibit judges from making public statement in the course of their official duties or from explaining for public information the procedures of the court.

ILL.REV.STAT. ch. 110A, ¶ 63 (emphasis added). These sections strongly support a narrow construction of Rule 67(B)(1)(c) which, while preserving a judicial candidate's First Amendment right to speak, limit that speech when it pertains to issues that would be a part of "pending or impending proceedings."

Last, the case law supports a narrow construction of Rule 67(B)(1)(c). Very recently, in a case with facts almost identical to the instant facts, Judge Beatty of the United States District Court for the Southern District of Illinois was called upon to rule on the constitutional validity of Rule 67(B)(1)(c). *See Weber v. The Judicial Inquiry Board, et al.,* No. 92–329WLB (S.D.Ill. July 31, 1992). Finding the Rule constitutional, Judge Beatty stated:

This Court believes that the Supreme Court of Illinois would read Rule 67 to mean that 'disputed legal or political issues' refers to those issues which are likely to come before the Court.

The same reasoning would apply to the pledges and promises provisions of the Rule. Thus, the prohibition against making 'pledges and promises' would apply only to those issues likely to come before the Court.

*Weber, supra,* slip op. at 7 (citing *Stretton,* 944 F.2d at 144). While not bound by another district court's decision, we agree with Judge Beatty's conclusion. The plaintiff's attack on *Stretton,* cited by both Judge Beatty and Magistrate Judge Weisberg in support of a narrow construction, is not compelling. The plaintiffs point to the fact that in *Stretton* the Pennsylvania Judicial Inquiry Board explicitly bound itself to enforcing the canon in question when a judicial candidate made a statement related to an issue that could come before the court. *Stretton,* 944 F.2d at 142–143. The Illinois JIB has not indicated that its enforcement of Rule 67(B)(1)(c) is so narrowed. In Young's words, "this Court should reject vague 'predictions' that the defendants would be unlikely to prosecute Young, or that the Courts Commission would be unlikely to find him in violation of the Rule, unless his speech was on a matter likely to come before him as a judge." Young Objections, at 11–12. It is clear, however, that the Third Circuit in *Stretton* did not rely solely on the narrow enforcement philosophy of the Pennsylvania Judicial Inquiry Board. The court stated:

Taking into account [the] practice [of the Pennsylvania Supreme Court to construe rules to avoid constitutional objections], the position of the Judicial Inquiry Board, the compelling state interest and the constitutional difficulties, we are persuaded that the broad interpretation of Canon 7 urged upon us by plaintiff would be rejected by the state Supreme Court and that it would adopt the con-

struction advanced by the Boards here. This reading of Canon 7 does not violate the First Amendment because the limitation does not unnecessarily curtail protected speech, but does serve a compelling state interest.

*Stretton*, 944 F.2d at 144. Illinois shares the same compelling state interest identified by the *Stretton* court. The Illinois Supreme Court would follow the same rule of construction in narrowing the Rule as would the Pennsylvania Supreme Court. A narrow construction of Rule 67(B)(1)(c) is even more justifiable given the proviso, which the Pennsylvania canon did not contain. We conclude the Magistrate Judge's narrow construction of Rule 67(B)(1)(c), limiting the Rule's application to issues that are likely to come before the court, is correct. The plaintiffs' objections, in this regard, are overruled.

 Having come to the conclusion that Rule 67(B)(1)(c) should be narrowly construed, questions of nexus and overbreadth are disposed of easily. A statute regulating speech must be narrowly tailored to the compelling state interest, or in other words, there must be sufficient nexus between the compelling state interest and the regulation imposed. *Frisby*, 487 U.S. at 487, 108 S.Ct. at 2503 (regulation must target and eliminate no more than the exact source of the "evil" it seeks to remedy). Young argues: "Defendants simply make the assumption that the Rule enhances the impartiality of the judiciary.... But that, like the Report's false analogy, does not carry the burden of demonstrating nexus. Simply put, a partial judge is a partial judge regardless of whether he makes public statements that demonstrate his particularity. And a judge lacking in integrity will, unfortunately, lack integrity regardless of whether she states and dis-

cusses her views of disputed political issues." Young Objections, at 14. Young misses the point. Rule 67(B)(1)(c) cannot, and does not attempt to, eradicate partiality in the judiciary. Rule 67(B)(1)(c) *does promote* integrity and impartiality in the judiciary.

All candidates for elective office, including judicial candidates, presumably come equipped with opinions and predilections which are the result of their life experience. A judge, however, must cast these aside, saving only his or her intrinsic notion of fundamental fairness. The canon [16] recognizes that pre-election commitments by judicial candidates impair the integrity of the court by making the candidate appear to have pre-judged and issue without benefit of argument of counsel, applicable law, and the particular facts presented in each case.

*Ackerson*, 776 F.Supp. at 315. Rule 67(B)(1)(c) prohibits pre-election promises or pledges on issues likely to come before the court. The rule prohibits a candidate from announcing a position on a disputed issue likely to come before the court. These regulations are narrowly tailored to prevent prejudgment by a candidate, and thus preserve the judiciary's role as an impartial forum for dispute resolution. Rule 67(B)(1)(c) does not prohibit a judicial candidate from commenting on issues of court administration and other issues not likely to be presented to him as a judge. The Rule certainly does not prohibit a candidate from commenting on his experience, background and character. Therefore, the Rule maintains its nexus with the compelling state interest in maintaining a judiciary free from bias and imbued with integrity. The Rule does not prohibit speech which is not related to this goal. The plaintiffs' objections as to nexus are overruled.[17]

---

**16.** As noted above, the canon in *Ackerson* is identical to Rule 67(B)(1)(c) except for Rule 67(B)(1)(c)'s proviso.

**17.** Related to nexus is the requirement that the regulation imposed be the least restrictive means of advancing the compelling state interest. *Boos v. Barry*, 485 U.S. 312, 329, 108 S.Ct. 1157, 1168, 99 L.Ed.2d 333 (1988) Young suggests: "Defendants have an obvious alternative

measure at their disposal that would advance the state's interests, but not abridge protected expression, for they could aggressively seek the removal of judges whose rulings or other conduct demonstrate their lack of objectivity or their refusal to abide by precedent." Young Objections, at 22. We agree with the Magistrate Judge that this suggestion is "unrealistic." Report, at 40. The court cannot conceive of a more difficult task than to attempt to determine

Even when a state does have the power to regulate an area of speech, the regulation "must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). If a statute, while validly prohibiting one form of expression, unreasonably restricts speech which is protected by the First Amendment, the statute is overbroad and constitutionally invalid. *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940). In *National Association for the Advancement of Colored People v. Button*, Justice Brennan noted that the standards for permissible statutory vagueness were strict:

> Furthermore, the [statute] may be invalid if it prohibits privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar.

*N.A.A.C.P. v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963).[18]

The Magistrate Judge found neither the pledge or promise provision nor the disputed issue provision overbroad. *See* Report, at 37–38. The court agrees with the Magistrate Judge's conclusion. Having concluded that the Magistrate Judge's narrow construction of Rule 67(B)(1)(c) is appropriate, there can be no question that Rule 67(B)(1)(c) does not substantially restrict constitutionally protected speech. The Rule restricts only those

statements which would cast doubt upon the impartiality of a judge to decide an issue on which the judge had previously announced his position. The Rule does not foreclose comment on subjects unlikely to be litigated before the judge, on issues of court administration, or on character or experience issues which are part of the campaign. The parties' objections based upon overbreadth are overruled.

### 3. Void for Vagueness

The plaintiffs' last challenge to Rule 67(B)(1)(c) is that it is void for vagueness. The void-for-vagueness doctrine is closely related to overbreadth and, in many ways, based upon similar principles. *See Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965) (statutes which are vague and overbroad lend themselves too readily to denial of First Amendment rights); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982) (when a facial challenge is made, court's first task is to determine if statute is overbroad; court's next inquiry is whether statute is impermissibly vague); *see generally* NO-WAK & ROTUNDA, *supra* note 12, at § 16.9, at 950. Explaining the vagueness standard, the Court has said:

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent

a judge's alleged partiality by his lack of adherence to precedent.

Young also repeats an argument raised before the Magistrate Judge that the Rule is unconstitutional as applied to him because of his status as a member of the Illinois General Assembly. *See* Young Objections, at 23–25. Magistrate Judge Weisberg correctly addressed this issue in his Report. *See* Report, at 33–34 (citing *Clements v. Fashing*, 457 U.S. 957, 966–971, 102 S.Ct. 2836, 2845–48, 73 L.Ed.2d 508 (1982)). We adopt the Magistrate Judge's analysis in overruling Young's objection in this regard.

**18.** Thus, the Court has indicated that even if a statute would be valid as applied to the challenging party, normal standing rules should be relaxed to allow facial challenges to statutes, which because of their overbreadth, would chill "'persons whose expression is constitutionally protected [so that they] may well refrain from exercising their rights for fear of criminal sanctions....'" *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 799 n. 17, 104 S.Ct. 2118, 2125 n. 17, 80 L.Ed.2d 772 (1984) (quoting *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972)).

by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnote omitted).

*Flipside, Hoffman Estates, Inc.*, 455 U.S. at 498, 102 S.Ct. at 1193 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)). When a law inhibits expression protected by the First Amendment, a more strict vagueness standard applies. *Flipside, Hoffman Estates, Inc.*, 455 U.S. at 499, 102 S.Ct. at 1193 (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2299). The Magistrate Judge concluded that Rule 67(B)(1)(c) was neither facially vague nor vague as applied. Report, at 36–41. The court has examined Rule 67(B)(1)(c) for impermissible vagueness. We find we must agree with the Magistrate Judge's conclusion that Rule 67(B)(1)(c) is not void for vagueness.

Magistrate Judge Weisberg examined the pledge or promise provision and disputed issue provision separately. The plaintiffs' objections are essentially a rehash of the arguments presented to the Magistrate Judge. We have reviewed *de novo* these arguments and they do not require extensive discussion here. First, it is clear a person of ordinary intelligence would know when a statement is prohibited by Rule 67(B)(1)(c). Justice Buckley argues:

> An example of a statement which the Rule could be construed to prohibit, but which a reasonable person would not consider impermissible under the rule is, "In my rulings I have always zealously protected the rights of citizens/individuals." Although such a comment might be meant to reflect a candidate's interest in safeguarding constitutional rights, it could be construed as an implied promise to accord preferential treatment to "citizens" in cases involving U.S. citizens and immigrants from other countries or as an implied promise to accord preferential treatment to "individuals" involved in disputes with corporations.

Buckley Objections, at 12. Justice Buckley's argument fails because the ambiguity raised by his argument is not in the Rule but in the example suggested. Rule 67(B)(1)(c) prohibits pledges or promises unambiguously. The ordinary person, even a person without the extensive legal training of a lawyer or judge, is capable of knowing, after reading the rule, that the conduct prohibited is the making of a pledge or promise on an issue likely to come before the court.

Rule 67(B)(1)(c) is not void for vagueness even when applied to the specific statement made by Justice Buckley. Justice Buckley makes much of the fact that the statement, "I have never written an opinion reversing a rape conviction," was described by both the JIB and Magistrate Judge Weisberg, as an implied promise. Report, at 36. But as the Magistrate Judge notes: " '[E]nactments need not provide "meticulous specifics" or mathematical precision; they are permitted "flexibility and reasonable breadth." ' *Berg v. Health and Hospital Corporation*, 865 F.2d 797, 805 (7th Cir. 1989) (quoting *Grayned*, 408 U.S. at 110 [92 S.Ct. at 2300] )." Report, at 36. Rule 67(B)(1)(c) can be construed to apply to implied as well as express promises. Buckley contends that the statement is not even an implied promise so much as a statement of his record. This position ignores the context of Justice Buckley's statement. The court believes that a person of ordinary intelligence would know that, a statement made in the context of a political campaign, singling out a specific issue of high emotional appeal, conveys implications beyond the bare words of the statement. For what other reason would a candidate comment on the consistency of his record on an issue except to imply to the electorate his continued consistency. Justice Buckley's objection is overruled.

Young attacks the Rule on the second element of the *Grayned* standard, stating

that Rule 67(B)(1)(c)'s vagueness results in arbitrary enforcement. Young points to several cases, some of which were decided by non-Illinois courts, as evidence of arbitrary enforcement of Rule 67(B)(1)(c). Young compares *In re Kaiser*, 111 Wash.2d 275, 759 P.2d 392 (1988) (en banc), which held that a statement by a judicial candidate that he was "tough on drunk driving" as a violation of the pledge or promise provision, with *In re Tully*, No. 90–CC–2 (Oct. 25, 1991), an order by the ICC which held Judge Tully's (now Justice Tully) statements that he was "tough on crime" and "tough on taxes" as non-violative of the pledge or promise provision. Young Objections, at 26. Young implies that these cases are inconsistent and prove arbitrary enforcement of the rule. Notwithstanding that these cases involve different jurisdictions, the court believes the cases are entirely consistent. The statement in *In re Kaiser* ("tough on drunk driving") clearly implies a predisposition against a particular class of criminal defendant, much like Justice Buckley's statement on rape convictions. The statements in *In re Tully* ("tough on taxes" and "tough on crime") do not single out any particular class of litigant. At most, these statements indicate a general intent to strictly enforce certain legal codes, a judicial philosophy entirely consistent with the Rule's allowance that a judge may promise to give "faithful and impartial performance of the duties of the office." ILL.REV.STAT. ch. 110A, ¶ 67(B)(1)(c).[19]

The IJA's objections on vagueness grounds fall somewhere between those raised by Justice Buckley and Young. The IJA posits:

Suppose the candidate states, "I think that the Illinois Supreme Court's position on endless death penalty appeals is far too liberal". Is that an unlawful implicit pledge to be tough on death penalty appeals, or is the candidate merely announcing her views on a measure to improve the legal system and the adminis-

tration of justice by streamlining death penalty appeals? If so, can reasonable people disagree as to whether this casts doubt upon the candidate's ability to decide specific death penalty cases impartially?

IJA Objections, at 11. The court believes the answer to the IJA's last question is no. Like Justice Buckley, the IJA constructs a statement purposefully ambiguous while ignoring the clarity of Rule 67(B)(1)(c). Even in the suggested statement's ambiguity, however, it is clear that the speaker of the suggested statement is taking a position on an issue likely to come before him or her as a sitting Illinois Circuit, Appellate, or Supreme Court judge. Whether the statement is a pledge or an announcement of a view on a disputed issue is of no import since Rule 67(B)(1)(c) clearly prohibits both. The candidate who wishes to avoid sanction but still comment on the permissible subject of court administration need only remove the offending reference to a disputed legal issue—death penalty appeal. The IJA's objection to Rule 67(B)(1)(c) on vagueness grounds is overruled.

### D. *Sua Sponte* Summary Judgment

The court concludes summary judgment is not appropriate in the plaintiffs' favor. Summary judgment is appropriate in defendants' favor, but defendants have not so moved. Therefore, the court moves *sua sponte* for summary judgment in the defendants' favor and grants the motion.

Granting summary judgment sua sponte warrants special caution. Summary judgment may be granted by a district court "for a party without motion, when the outcome is clear, so long as the opposing party has had an adequate opportunity to respond." *Smith v. DeBartoli*, 769 F.2d 451, 452 (7th Cir. 1985), *cert. denied*, 475 U.S. 1067 [106 S.Ct. 1380, 89 L.Ed.2d 606] ... (1986) (*citing, Macon v. Youngstown Sheet & Tube Co.*, 698 F.2d 858, 861 (7th Cir.

---

**19.** Young's challenge on vagueness grounds to the disputed issues provision is primarily grounded in objecting to the Magistrate Judge's narrow construction of the Rule. *See* Young Objections, at 28–28. Since the court has rejected the plaintiffs' objections in this regard, Young's vagueness challenge to the disputed issue provision is unpersuasive.

1983); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280–81 (7th Cir.1986) [ )]. Indeed, we have held that *"sua sponte* dismissals without prior notice or opportunity to be heard on the issues underlying the dismissal ... 'generally may considered hazardous.' " *Doe On Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 415 (7th Cir.1986) (*quoting, Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1198 (7th Cir. 1977), *cert. denied,* 435 U.S. 905 [98 S.Ct. 1450, 55 L.Ed.2d 495] ... (1978).

*Sawyer v. United States,* 831 F.2d 755, 759 (7th Cir.1987).

For several reasons, the court believes summary judgment *sua sponte* is especially appropriate in the instant case. First, the parties are on notice that summary judgment *sua sponte* may be granted. Magistrate Judge Weisberg specifically suggested summary judgment be granted for the defendants *sua sponte. See* Report, at 41–42. Second, the parties agree there are no issues of material fact in dispute. Plaintiffs will not be prejudiced by not proceeding to trial since there is no need for a trier of fact. Last, the parties have had adequate time and opportunity to brief the issues presented by this case. Three separate motions for summary judgment, one by each of the plaintiffs, were presented to the Magistrate Judge. The defendants responded at length. The Magistrate Judge's Report spans forty-two pages of scholarly analysis and garnered more than sixty-two pages of objections. Clearly, the plaintiffs have had an opportunity to present their side of the story. The court concludes that plaintiffs will not be prejudiced by the entry of summary judgment *sua sponte* for the defendants.

## II. THE JIB'S MOTION TO DISMISS

Prior to the plaintiffs filing their motions for summary judgment, the JIB and the ICC filed motions to dismiss Justice Buckley's complaint. This motion was also referred to Magistrate Judge Weisberg for a Report and Recommendation. *See Buckley v. Illinois Judicial Inquiry Board, et al.,* No. 91 C 7635 (Feb. 24, 1992) (Weisberg, M.J.) [hereinafter "Report and Recommendation on the Motion to Dismiss"]. The Magistrate Judge recommended that the JIB's motion to dismiss be denied, but that the ICC's motion to dismiss be granted. The JIB has filed objections to the Magistrate Judge's Report and Recommendation on the Motion to Dismiss. 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b). As stated above, we review *de novo* those portions of the Magistrate Judge's Report and Recommendation to which the JIB objects. For the reasons discussed below, we overrule the JIB's objections and adopt the Magistrate Judge's Report and Recommendation in its entirety.[20]

The JIB objects to the Magistrate Judge's conclusion that the ICC is not a "court" within the meaning of 28 U.S.C. § 1738 (the "full faith and credit statute"). The full faith and credit statute requires that "judicial proceedings [of any State, Territory, or Possession the United States] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. The JIB's contention to the Magistrate Judge was thus: Justice Buckley presented his constitutional challenge to the ICC and, therefore, the ICC's decision must be given pre-

---

**20.** The ICC moved to dismiss the complaint based upon the Eleventh Amendment's proscription against suits by citizens against the state. U.S. CONST. amend. XI. States are immune from suit unless they consent. The ICC is a "body" of the State of Illinois and is protected by this immunity. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (Eleventh Amendment immunity extends to agencies or departments of the state). The Eleventh Amendment does not bar suits against state officials challenging the enforcement of an allegedly unconstitutional statute or regulation. *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909–10. The Magistrate Judge granted leave to Buckley to amend his complaint to name the Secretary of the Illinois Courts Commission as a party plaintiff. Hence, while the ICC is no longer a party to this action, we may still enter an order voiding the ICC's enforcement of an unconstitutional act. Since we find in the ICC's favor on the motion for summary judgment, this, of course, will not be necessary.

clusive effect by this court. The Magistrate Judge concluded that while the ICC's function was "judicial in nature," it was not a "court" within the meaning of the full faith and credit statute. Report and Recommendation on the Motion to Dismiss, at 10 (citing *Pincham v. Illinois Judicial Inquiry Board*, 681 F.Supp. 1309, 1323 (N.D.Ill.1988), *aff'd*, 872 F.2d 1341 (7th Cir. 1989). Therefore, the Magistrate Judge concluded Justice Buckley's claim was not barred.

The JIB seizes upon a statement made by Judge Rovner in *Pincham* as supporting its position. Judge Rovner stated: "The Court concludes that the Courts Commission is, in fact, an independent state court with very limited jurisdiction." *Pincham*, 681 F.Supp. at 1309. In affirming Judge Rovner's decision, the Seventh Circuit implicitly approved this statement. *Pincham*, 872 F.2d at 1345. The fault in the JIB's position is that neither Judge Rovner nor the Seventh Circuit was speaking in terms of the full faith and credit statute. *Pincham* was resolved on the basis of the *Younger* abstention doctrine. Briefly, the *Younger* abstention doctrine requires a federal court to abstain when there exists an "ongoing state judicial proceeding," implicating important state interests and the state proceedings afford an adequate opportunity to raise constitutional challenges. *Pincham*, 872 F.2d at 1346 (citing *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). In other words, the *Pincham* courts were not required to conclude that the ICC was a court so much as it was necessary that an "ongoing state judicial proceeding" be present. As the Magistrate Judge notes: " 'Judicial' and 'court' are not synonyms, and the *Younger* abstention doctrine applies to state quasi-judicial administrative proceedings as well as court proceedings. *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619 [106 S.Ct. 2718, 91 L.Ed.2d 512] (1986)." Report and Recommendation on the Motion to Dismiss, at 10. The Illinois

Constitution article creating the JIB and the ICC does not describe the ICC as a court. ILL. CONST. art. VI, § 15(e). The ICC is not an administrative agency under the control of the executive branch. The Illinois Supreme Court has concluded that the ICC is not a court. *People ex rel. Harrod*, 14 Ill.Dec. at 260–61, 372 N.E.2d at 65–66. The court does not believe the *dicta* in the *Pincham* decisions requires a contrary result. The JIB's objection is overruled.

## III. CONCLUSION

The Court has been called upon to consider the constitutionality of a rule limiting the speech of judicial candidates. We do so with great apprehension since "[c]ompetition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968). These freedoms were secured at great cost and must be jealously guarded. *See Whitney v. California*, 274 U.S. 357, 375–77, 47 S.Ct. 641, 648–49, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring) ("Those who won our independence believed that the final end of the State was to make men free to develop their faculties; and that in its government the deliberative forces should prevail over the arbitrary.").[21] Illinois chooses to select its judges by means of election. The wisdom of this choice is not subject to this court's commendation or criticism. The Supreme Court of Illinois has wisely chosen to enact rules which will preserve the impartiality and integrity of the Illinois judiciary no matter what method of selection is employed. The Rule is not arbitrary. Under the analysis discussed above, Rule 67(B)(1)(c) would be constitutional regardless of whether Illinois chose to elect its judges or fill judicial vacancies by other means, such as appointment. To maintain the impartiality and integrity of the judiciary, judicial candidates must be prevented from discussing, whether by announcement or pledge, issues which will require impar-

---

**21.** *Whitney* was overruled by *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); however, Justice Brandeis' words remain compelling.

tial resolution in the courts these candidates hope to occupy. Judicial candidates cannot be allowed to appeal to popular sentiment in the hopes of being elected, appointed, or retained. To permit otherwise would deprive litigants of the expectation of an impartial judiciary.

For the forgoing reasons, the Judicial Inquiry Board's motion to dismiss is denied. The Illinois Courts Commission's motion to dismiss is granted. Justice Buckley's, Anthony Young's and the Illinois Judges Association's motions for summary judgment are denied. The court grants summary judgment *sua sponte* for the Illinois Judicial Inquiry Board, the Illinois Courts Commission and the Attorney Registration and Disciplinary Commission.

SO ORDERED.

APPENDIX

MAGISTRATE JUDGE'S RULING ON MOTION TO INTERVENE OF ILLINOIS JUDGES ASSOCIATION (91 C 7635) AND REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT (91 C 7635 AND 92 C 1889)

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | The Rule | 103 |
| II. | The Buckley Case | 105 |
| III. | The Young Case | 106 |
| IV. | Justiciability | 107 |
| V. | Abstention | 111 |
| VI. | Permissible Limitations of Speech in Judicial Elections—The State's Compelling Interests | 111 |
| VII. | Construing the Rule | 117 |
| VIII. | The Constitutionality of the Rule as Applied | 119 |
| IX. | Facial Challenges to the Rule | 120 |
| X. | Conclusion | 124 |

These two cases present similar constitutional challenges to Rule 67(B)(1)(c), Ill. Rev.Stat. Ch. 110A ¶ 67(B)(1)(c) (1989) (the Rule), a rule adopted by the Illinois Supreme Court which restricts the campaign speech of candidates for judicial office. There are no disputed facts and the court

has been asked to determine the constitutionality of the Rule as a matter of law. Summary judgment motions by the plaintiffs in both cases have been referred to the undersigned for reports and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Because much of the court's analysis is applicable to both cases, the recommendations have been combined.

## I. The Rule

The Rule is part of the Illinois Supreme Court's Code of Judicial Conduct (Code). Ill.Rev.Stat. Ch. 110A ¶ 61 et seq. (1989). The Code is enforced by the Judicial Inquiry Board (Board). The Board brings charges of judicial misconduct before the Illinois Courts Commission (Commission), which has the power to discipline and remove judges from office. Illinois Constitution Art. VI, § 15(b)–(g) (1970). The Rule is enforced against candidates for judicial office who are not sitting judges by the Illinois Attorney Registration and Disciplinary Commission (ARDC). Rules of Professional Conduct Rule 8.2(b), Ill.Rev.Stat. foll. Ch. 110A ¶ 776 (1989). The Rule reads as follows:

A candidate, including an incumbent judge, for a judicial office filled by election or retention

\* \* \* \* \* \*

(c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact; provided, however, that he may announce his views on measures to improve the law, the legal system, or the administration of justice, if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him.

The Rule can be conveniently divided into four parts which we refer to as the pledges or promises provision, the disputed issues

provision, the misrepresentation provision and the proviso.[1]

Similar rules are in effect in most states having elected judges.[2] The prohibitions of the Rule are not new, even though only adopted as a Supreme Court Rule in Illinois in 1986. Canon 30 of the Canons of Judicial Ethics adopted in 1924 by the American Bar Association (ABA) stated:

> A candidate for judicial position should not make or suffer others to make for him, promises of conduct in office which appeal to the cupidity or prejudices of the appointing or electing power; he should not announce in advance his conclusions of law on disputed issues to secure class support, and he should do nothing while a candidate to create the impression that if chosen, he will administer his office with bias, partiality or improper discrimination.

ABA, *Opinions of the Committee on Professional Ethics and Grievances with the Canons of Professional Ethics Annotated and Canons of Judicial Ethics Annotated* 54 (1957). The Canons were replaced by the Code of Judicial Conduct, adopted by the ABA in 1972. Except for its proviso, the Illinois Rule follows Canon 7B(1)(c) of the 1972 ABA Code which states:

> (1) A candidate, including an incumbent judge ...

> (c) should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or

misrepresent his identity, qualifications, present position, or other fact.

The Reporter noted:

> By being a judge or a candidate for judicial office, a person does not surrender his rights as a citizen; nevertheless, the fundamental need for impartiality and the appearance of impartiality of judges dictates that limits be placed on the political conduct of judges and candidates for judicial office.

> \* \* \* \* \* \*

> The tensions between the demands of political reality and the necessity that a judge be impartial and appear to be impartial became fully evident to the Committee when it began considering the standards to apply to a candidate for judicial office during a partisan election process.

E. Wayne Thode, *Reporter's Notes to the Code of Judicial Conduct* 95–96 (1973) (Reporter's Notes). See also, E. Wayne Thode, *The Development of the Code of Judicial Conduct*, 9 San Diego L.Rev. 793, 797 (1972).

When the ABA replaced this Code with the Model Code of Judicial Conduct in August 1990, the pledges or promises and misrepresentation provisions were not changed, but the disputed issues language was replaced by Canon 5A(3)(d)(ii) of the Model Code which states that a candidate for judicial office shall not

> (ii) make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court;
> . . . .

---

1. Although at times the plaintiffs do not distinguish between these provisions, and plaintiffs in both actions ask the court to strike down the entire Rule, these provisions are severable and their constitutionality should be separately determined. *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 506–507, 105 S.Ct. 2794, 2803–04, 86 L.Ed.2d 394 (1985). The misrepresentation provision can stand independently, since a misrepresentation of fact is neither a pledge or promise nor an opinion on a disputed issue. Neither plaintiff challenges the misrepresentation provision. And while some statements can be seen as both pledges of conduct in office and views on disputed issues, for reasons discussed later the two provisions are distinguishable in

the circumstances of these cases. We will therefore consider each plaintiff's challenge to each provision separately.

2. As of 1990, twenty-five states, almost three-quarters of the states having elected judges, had adopted ABA Canon 7B(1)(c) verbatim. Illinois differs in its addition of the concluding proviso. Patrick M. McFadden, *Electing Justice: The Law and Ethics of Judicial Election Campaigns* 86 (American Judicature Society 1990). Rulings and cases arising under other states' versions of the Rule are collected in J. Shaman, S. Lubet and J. Alfini, *Judicial Conduct and Ethics,* 329–35 (1990).

ABA Model Code of Judicial Conduct, ABA/BNA Lawyers' Manual on Professional Conduct at 01:3020; Def.Br.Exh. A, tab I.

## II. The Buckley Case

### A. Facts and Proceedings before the Commission

Plaintiff Robert C. Buckley is a Justice of the Illinois Appellate Court. He is the candidate of the Republican Party for a seat on the Illinois Supreme Court, and is also running for retention of his Appellate Court seat in the November 1992 election. This suit arises out of Buckley's unsuccessful 1990 campaign for election to the Illinois Supreme Court in which he authorized the distribution of campaign materials stating, among other things, that he had never written an opinion reversing a rape conviction.

The Board brought a complaint against Buckley before the Commission, alleging that the advertisement violated the Rule because it was an implied pledge or promise that Buckley would treat appellants convicted of rape differently than other appellants. The amended complaint also alleged that the advertisement violated two other rules, Illinois Supreme Court Rule 61, which provides that "a judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved," and Illinois Supreme Court Rule 62A, which provides that "a judge should respect and comply with the law and should conduct himself at all times in a manner which promotes public confidence in the integrity and impartiality of the judiciary."

In his answer and brief before the Commission, Buckley argued that Rule 67B(1)(c) violated his rights to free speech and equal protection of the laws under the First and Fourteenth Amendments of the United States Constitution and the Illinois Constitution, both on its face and as applied to his advertisement. Buckley argued that the language of the Rule is unconstitutionally vague and is not the least restrictive means for achieving the state's interest.

In *In re Justice Robert C. Buckley of the Illinois Appellate Court,* No. 91–CC–1 (October 25, 1991), Mo. for Prelim.Inj. Exh. G, disposing of the Board's complaint against Buckley, the Commission stated that it need not discuss Buckley's constitutional arguments because they were based on that part of the Rule forbidding a candidate to announce his views on disputed legal or political issues, while the Board's amended complaint only charged violations of the pledges or promises clause. *Id.* at 3. The Commission held that Buckley's statement that he had never written an opinion reversing a rape conviction violated the pledges and promises provision of the Rule:

> Although this statement may be an accurate assessment of the respondent's record as an Appellate Court Judge, it suggests that a higher standard must be met by a defendant charged and convicted of rape whose case is argued before the respondent on review. This is tantamount to an implicit pledge that rape convictions on review have been and will continue to be treated summarily by the respondent.

The Commission also found Buckley's statement that he had never authored an opinion reversing a rape conviction to be in violation of Rule 61 and 62A because it ran counter to promoting confidence in Buckley's impartiality and impacted negatively on preserving the independence of the judiciary. However, the Commission declined to impose any sanction, stating that "Accordingly, although we find a violation of the Code, it is insubstantial, insignificant, and does not warrant the imposition of a reprimand." *Id.* at 4–5.

### B. Procedural History

Buckley filed this suit for injunctive and declaratory relief against the Commission and the members of the Board in their official capacities on November 27, 1991, claiming that the Rule is vague, overly broad, and violates his rights to free speech and equal protection under the First and Fourteenth Amendments to the Constitution. Buckley seeks (a) a declaration that

the Rule is unconstitutional both on its face and as applied to him, (b) a declaration that the Commission's application of Rule 61 and 62(A) to him is unconstitutional, (c) an order directing the Commission to vacate its October 25, 1991 order and (d) an injunction prohibiting the Board and the Commission from seeking or imposing any sanction or discipline upon him for the conduct alleged in the Board's complaint. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

On December 11, 1991 the Commission denied the Board's motion for reconsideration. (Order attached to Board's Br. in support of its motion to dismiss.) The Board then moved to dismiss the complaint on two grounds: (1) that 28 U.S.C. § 1738 requires this court to give preclusive effect to the Commission's order which at least implicitly rejected Buckley's constitutional challenge and (2) that Buckley's request for injunctive relief is moot, since the Board has declared it has no intention of pursuing the matter further. The Commission separately moved to dismiss on the ground that Buckley's suit against it is barred by the Eleventh Amendment.

In a Report and Recommendation filed on February 24, 1992 we recommended that the Commission's motion to dismiss be granted and that the Board's motion be denied. Judge Alesia has not yet ruled; in the present Report we assume that the Commission is no longer a party. Buckley has been granted leave to amend his complaint to add William H. Madden, Secretary of the Commission, as a party defendant. Buckley withdrew his earlier motion for preliminary injunction at the time he moved for summary judgment.

### C. The Illinois Judges Association's Motion to Intervene

The Illinois Judges Association (IJA), an unincorporated association of approximately 800 Illinois state court judges and retired judges, has moved to intervene in No. 91 C 7635 pursuant to Rule 24(b), Fed. R.Civ.P. This motion was referred to the undersigned for ruling pursuant to 28 U.S.C. § 636(b)(1)(A) and it was continued pending a ruling on the motions to dismiss. In its amended intervening complaint the IJA also seeks a declaratory judgment that the Rule is unconstitutional. Its claim thus shares questions of law with Buckley's and the prerequisite for intervention under Rule 24(b) has been met.

As discussed in detail below, we find that the IJA's complaint does not present a genuine case or controversy, but this is not a reason to deny the motion to intervene. Permissive intervention under Rule 24(b) does not require that the intervenor have an interest in the subject matter of the dispute, as does intervention as of right under Rule 24(a). For permissive intervention, the intervenor must have a "claim" or "defense" but this need not be a legally sufficient claim. *Brooks v. Flagg Bros.*, 63 F.R.D. 409, 415 (S.D.N.Y.1974); see 3B *Moore's Federal Practice* ¶ 24.10[2] (1991). The IJA's member judges have an "interest" (in the loose sense) in this suit in that they are bound by the Rule and will be affected by a determination of its constitutionality.

The motion is unopposed, and we see no reason why IJA's participation will unduly delay or prejudice the adjudication of the rights of the original parties. The motion to intervene is granted. The IJA has moved for summary judgment.

### III. The Young Case

Plaintiff Anthony L. Young is a lawyer and a member of the Illinois General Assembly who is a candidate for Judge of the Circuit Court of Cook County. During his campaign Young wishes to express his views on capital punishment, abortion, the state's budget, public school education, public financing of health care, actions of the Chicago City Council, political candidates in his district, and "other local and national disputed issues." Young also wishes to pledge that he will try to eliminate delays in the judicial process and seek to ensure that everyone is fully able to understand the judicial proceedings in which they are involved. Young Decl., Exh. 1 to Plaintiff's Motion for Summary Judgment ¶¶ 1–8.

However, Young alleges that if he does so disciplinary action may be taken against him by the ARDC or the Board for violating the Rule. He has refrained from participating in forums for judicial candidates, from discussing disputed legal and political issues and from attending political gatherings and supporting other political candidates, all for fear of sanctions under the Rule. *Id.* ¶¶ 7, 8. Young has sued the members of the ARDC, the Board and the Executive Director of the Board in their official capacities. He seeks a declaratory judgment both that the Rule is unconstitutional on its face and cannot be constitutionally applied either to a candidate who is a legislator or to a candidate who is not a sitting judge. He also seeks an injunction barring the ARDC and the Board from enforcing the Rule. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## IV. Justiciability

### A. Standing—All Plaintiffs

To have standing, a plaintiff must allege a distinct and palpable injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir.1988). Buckley, Young and the IJA each have standing. Buckley and Young assert their own rights as candidates. The IJA asserts the rights of its members who are candidates for election or retention. Buckley and Young each claim that the Rule hinders him by restricting his right to speak to the voters. The IJA alleges a similar injury on behalf of its members who are candidates. Under *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977), the IJA has standing to assert the rights of its members. The relief all plaintiffs request, a determination that the Rule violates the First Amendment and enjoining its enforcement, would redress those injuries.

### B. The Case or Controversy Requirement

A prerequisite for federal jurisdiction is a live case or controversy. When a plaintiff intends to violate a statute challenged on constitutional grounds, there must be at least a credible threat of prosecution. An imaginary or speculative fear of prosecution is not enough to create a justiciable controversy. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298–99, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). On the other hand, where self-censorship is a danger, a plaintiff need show only that he has "an actual and well-founded fear that the law will be enforced." *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 634 (7th Cir.1990) (quoting *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988). Moreover, the usual rule that the courts should avoid constitutional adjudication whenever possible carries less weight in the First Amendment context. See *Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984).

The Supreme Court recently emphasized the need for a particularized controversy before a federal court should consider striking down a state statute. *Renne v. Geary,* 501 U.S. ——, 111 S.Ct. 2331, 115 L.Ed.2d 288 (June 17, 1991). Plaintiffs in *Renne* were voters and members of local political committees who challenged a state constitutional provision which prohibited political parties from endorsing candidates for nonpartisan offices. The Court concluded that plaintiffs failed to demonstrate a live dispute as to several claims including a claim that plaintiffs desired to endorse candidates in future elections. As to that claim, the Court stated, "We possess no factual record of an actual or imminent application of [the prohibition] sufficient to present the constitutional issues in 'clean-cut and concrete form'". 111 S.Ct. at 2339, 115 L.Ed.2d at 302, quoting *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947).

With these standards in mind, we examine each plaintiff's challenge to the Rule to

see if a live case or controversy has been alleged.

### C. Case or Controversy—Buckley

Buckley's complaint states that unless the Board is enjoined it will continue to pursue disciplinary action against him in violation of his First Amendment rights. Complaint ¶ 22. He also alleges that the Commission's finding of a violation will have a negative impact on his campaign. Complaint ¶ 23.

The first statement, that the Board will continue to pursue disciplinary action against Buckley, means either that he fears further prosecution for his past violation of the Rule or new prosecutions for future violations. As to the former, after the complaint was filed the Commission denied the Board's motion to reconsider its decision not to sanction Buckley and the Board stated that it will not seek to further prosecute Buckley for past conduct. Because we conclude that he has shown a reasonable fear of prosecution for future violations, we need not consider whether this post-suit conduct rendered his claims as to his past violation moot.

In his complaint, Buckley does not allege that he has violated or intends to violate the Rule, or that the Board has given any indication that it intends to prosecute him. However in his affidavit attached to his statement of material facts Buckley states at ¶ 9:

> As a result of [the Commission's finding that I violated the Rule], and because of the possibility of additional proceedings being instituted pursuant to the [Code] because of campaign literature I may distribute or campaign statements I may make, I am unable to conduct my campaigns in such a manner as to effectively communicate my qualifications to the voters and I will be deprived of the opportunity to discuss issues I have addressed as an Appellate Court Justice as they relate to my qualifications to sit on the Supreme Court of Illinois.

This statement does not specify what Buckley wishes to say, or how it might be held to violate the Rule. Nevertheless, reading the complaint together with Buckley's affidavit, it is reasonable to infer that Buckley wishes to make statements during his current campaign similar to those he made in 1990 which were found to violate the pledges and promises provision of the Rule, *i.e.*, that he has never authored an opinion reversing a rape conviction, as well as those statements which prompted accusations by the Board, although no finding of violation, *i.e.*, joint advertisements with candidates for law enforcement or prosecutorial offices and statements to the effect that he is "tough on crime." [3]

The Board has acknowledged its constitutional duty to enforce the Code. Board Br. at 11. The Board earlier argued that Buckley was not irreparably injured by the Commission's order because the Commission implicitly determined that the rules involved are constitutional and Buckley "need only conform his conduct to the Rules." Board Reply Br. In Support of Its Motion to Dismiss at 10. These statements support Buckley's contention that he faces the ongoing prospect of further prosecution for conduct similar to that charged in the Board's complaint. Given the fact of his past prosecution, Buckley has shown a credible threat that the pledges and promises provision of the Rule will be enforced against him. *Renne v. Geary*, —— U.S. at ——, 111 S.Ct. at 2339, 115 L.Ed.2d at 302. He has, therefore, presented a live controversy with respect to that provision.

We reach a different conclusion however as to the disputed legal and political issues provision. Buckley's affidavit states that he "will be deprived of the opportunity to discuss issues [he] addressed as an Appellate Court Justice as they relate to [his] qualifications to sit on the Supreme Court of Illinois." But he has not specified what issues he wishes to discuss. Some statements could be viewed as violating both the disputed issues and the pledges and prom-

---

**3.** As noted below in our discussion of Young's arguments, the Commission has ruled that general statements that a candidate is "tough on crime" do not violate the pledges and promises provision of the Rule.

ises provisions of the Rule. For example, Buckley's statement that he had never written an opinion reversing a rape conviction could be seen as an implied announcement of the view that appeals by defendants convicted of rape should be judged by a more rigorous standard than other appeals. However the Commission and the Board have treated the two provisions as separate. Buckley was only prosecuted under the pledges and promises provision and he has not alleged an intent to make statements which differ from those for which he was prosecuted.

Some courts considering the constitutionality of the disputed issues provision have distinguished between issues likely to come before the courts and other issues on which a candidate's expression of opinion is not likely to call his impartiality into question. *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania,* 944 F.2d 137, 143 (3rd Cir.1991); *Ackerson v. Kentucky Judicial Retirement and Removal Commission,* 776 F.Supp. 309, 314–15 (W.D.Ky.1991). Which category Buckley's "disputed issues" fall into could well decide the outcome.

Since he has never been prosecuted for violating the disputed issues provision and Buckley has not identified any issue he wants to discuss, the record does not show "an actual or imminent application of [that provision] sufficient to present the constitutional issues in 'clean-cut and concrete form'". *Renne v. Geary,* — U.S. at —, 111 S.Ct. at 2339, 115 L.Ed.2d at 302.

### D. Case or Controversy—The Illinois Judges Association

The IJA does not allege that any of its members have been prosecuted for violations of the Rule. The IJA states in its Amended Intervening Complaint at paragraphs 14 and 15 that

[t]here is an actual case or controversy between the IJA and the defendants because its members who are running for election ... are subject to complaints which might be filed by the [Board] for a wide range of statements or conduct protected by the first amendment.... The

*Buckley* and *Tully* cases demonstrate that defendants are prepared to seek disciplinary sanctions against members of the IJA who campaign actively for election or retention of a judicial office.

Simply being *subject* to an allegedly unconstitutional law is not enough; if it were, a general law could be challenged by every citizen, whether or not there was a reasonable prospect either that the law would be enforced against him or that he would have to modify his conduct to avoid violating it. A speculative possibility that the plaintiff may be affected is not enough. *Babbitt,* 442 U.S. at 298–99, 99 S.Ct. at 2308–09; *Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969). "[C]ourts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973).

The *Buckley* and *Tully* cases indicate that the Board will prosecute what it sees as violations of the Rule. But this creates no genuine controversy unless IJA members intend to violate the Rule or, if they claim the Rule is too vague to know what it proscribes, have a reasonable fear of prosecution. Allegations of a subjective "chill" are not enough, *Bigelow v. Virginia,* 421 U.S. 809, 816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600 (1975). We will not stretch the allegations of ¶ 15 to mean that the Board will seek sanctions against anyone who "actively" campaigns for judicial office, no matter what he or she says or does.

In ¶ 13 of its statement of undisputed material facts in support of its motion for summary judgment, the IJA states that its members

intend to distribute literature, make public speeches and through various media, make known their experience, qualifications, basic judicial philosophy and other important information which makes them particularly qualified for ... election.... Under the standard established by the defendants in their prosecution of Justice Buckley, several IJA members could be subjected to disciplinary action based upon such communications.

Of the topics mentioned in the first sentence none arguably violates the Rule, unless a candidate's pledges or promises of conduct in office or views on disputed legal or political issues have been discreetly bundled in the plain wrapper of "other important information." Even if we read the second sentence as suggesting that several members intend to say something arguably similar to the statements for which Justice Buckley was prosecuted, the IJA's showing is too vague to present the constitutional issues in concrete form or to show a credible threat of prosecution against its members.

### E. Case or Controversy—Young

Unlike Buckley, Young does not claim that he has violated the Rule or that it has been enforced against him. He claims that he has been and will be inhibited from making campaign statements out of fear of disciplinary action. In support of his claim of a well-founded fear of prosecution, Young points to two Commission decisions handed down October 25, 1991, *In re Justice Robert C. Buckley of the Illinois Appellate Court*, No. 91–CC–1, and *In re Judge John P. Tully of the Circuit Court of Cook County*, No. 90–CC–2 (copies attached to Young's Mem. in Support of Motion for Summary Judgment). The first decision we summarized above; in *Tully* the Commission found that Judge Tully had violated the Rule by making three misleading statements. By advertising "Vote for John P. Tully * * * * Appellate Court Judge," Judge Tully improperly implied that he was an incumbent appellate judge when he was not. By using the phrases "Highly Qualified and Endorsed" and " 'Highly Qualified'; Trial Lawyers Group" in campaign advertising without stating who endorsed him or found him highly qualified, Tully misrepresented his qualifications to the public. The Commission declined to find Tully's campaign statements "tough on crime" and "tough on taxes" to be pledges or promises for purposes of the Rule. *Tully*, Order at 7. Judge Tully was reprimanded.

Since Young does not propose to make false or misleading statements and does not challenge the misrepresentations portion of the Rule, *Tully* is irrelevant. While *Tully* may be evidence of the Board's *past* willingness to prosecute candidates who make general statements such as "tough on crime" and "tough on taxes," the Board is unlikely to do so now that the Commission has stated that such statements are not pledges or promises forbidden by the Rule.

*Buckley* is evidence that express or implied pledges or promises of conduct in office may result in prosecution. But we do not believe that Young stands the remotest chance of being prosecuted for the pledges he wants to make—that he will try to eliminate delays in the judicial process and seek to ensure that everyone is fully able to understand the judicial proceedings in which they are involved. Young Decl. ¶ 6. Unlike Buckley's implied pledge of harsher treatment for convicted rapists, these pledges are entirely consistent with the faithful and impartial performance of the duties of judicial office.

Furthermore, Young's proposed pledges are clearly covered by the proviso of the Rule which states that a candidate "may announce his views on measures to improve ... the administration of justice, if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him." He can have no reasonable fear of prosecution with respect to those pledges.

Young does however raise a genuine controversy with respect to the disputed issues provision which he has treated separately from the pledges and promises provision in his pleadings and briefs. Unlike the IJA, he has set forth certain issues he proposes to address. Young wishes to express his views on capital punishment, abortion, the state's budget, public school education, public financing of health care, actions of the Chicago City Council and political candidates in his district. While most of these are not specific, abortion and capital punishment are clearly disputed legal or political issues that come before the courts. We do not think he is required to specify what he intends to say about those issues in

order to present the constitutional issues in concrete form. We think Young has shown "an actual and well-founded fear that the [Rule] will be enforced" against him. *Virginia v. American Booksellers Association*, 484 U.S. at 393, 108 S.Ct. at 642.

## V. Abstention

The ARDC argues that the court should abstain from deciding Young's case and allow him to present the issue to the Illinois Supreme Court because the Rule is capable of a narrowing interpretation which would make its constitutionality clear. We consider whether to abstain in Buckley's case as well. While federal courts are generally bound to adjudicate all controversies properly before them, abstention may be appropriate when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question.

This is commonly known as "Pullman abstention." *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Pullman abstention requires some risk that a state statute will be held unconstitutional unless narrowed and some reasonable chance that it can be narrowed through interpretation. *Mazanec v. North Judson–San Pierre School Corp.*, 763 F.2d 845, 847 (7th Cir.1985). Both of these criteria are met here. However, we doubt that there is a practical way that the plaintiffs can put the problem before the Illinois courts. Although the Illinois Supreme Court makes the rules of judicial conduct, the power to construe them lies exclusively with the Commission and Illinois courts lack the power to do so. "Since the Commission is the tribunal with final responsibility for applying the rules of judicial conduct to disciplinary cases, there is no possibility that its interpretation of a rule will be at odds with an interpretation by a court." *People ex rel. Judicial Inquiry Board v. Courts Commission*, 91 Ill.2d 130, 61 Ill.Dec. 789, 792, 435 N.E.2d 486, 489 (1982).

We are not aware of any declaratory procedure permitting the plaintiffs to present their case to the Commission without violating the Rule and undergoing prosecution. Although Illinois courts might entertain a declaratory action challenging the constitutionality of the Rule, if we understand the Illinois Supreme Court correctly, the courts would either uphold the Rule or invalidate it in whole or in part; they could not construe it as meaning anything other than what it says on its face. This uncertainty as to the availability of a forum makes *Pullman* abstention inappropriate. *Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 568 (7th Cir.1986).

The prospect of delay in vindicating First Amendment rights during an election campaign also militates strongly against abstention. Uncertain of the validity of the Rule and unwilling to risk disciplinary proceedings, judicial candidates may restrict their campaign speech unnecessarily with consequent harm to the public. *Stretton*, 944 F.2d at 141.

As an additional ground for abstention, the ARDC observes that the Illinois Supreme Court has referred the Rule to its Committee on Judicial Conduct for discussion and possible revision and that Committee is scheduled to meet on this subject on May 9, 1992. It is true that action by the Committee and the Illinois Supreme Court could moot some or all of plaintiffs' claims in these cases, but there is nothing to indicate the outcome of the current review or how soon the Committee or the court will act.

## VI. Permissible Limitations of Speech in Judicial Elections—The State's Compelling Interests

We begin by analyzing what the state may constitutionally proscribe. Speech concerning the election of candidates to office is at the core of First Amendment freedoms, *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222–23, 109 S.Ct. 1013, 1019–20, 103 L.Ed.2d 271 (1989), but such speech may be limited to serve a compelling governmental interest. *Id.* at 225, 109 S.Ct. at 1021.

Because it limits pure speech having a specified content, the Rule must be subjected to the highest degree of scrutiny: not only must it be justified by a compelling state interest; it must be narrowly drawn so as not to unnecessarily circumscribe protected expression. *Brown v. Hartlage,* 456 U.S. 45, 53–54, 102 S.Ct. 1523, 1528–29, 71 L.Ed.2d 732 (1982); *Widmar v. Vincent,* 454 U.S. 263, 270, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981).[4]

Although a state is legitimately concerned with preserving the integrity of its election process, *Eu,* 489 U.S. at 231, 109 S.Ct. at 1024, in regulating campaigns for legislative and executive offices it "may not select which issues are worth discussing or debating in the course of a political campaign." *Brown,* 456 U.S. at 60, 102 S.Ct. at 1532 (citation omitted). The Rule does precisely that. However, we believe that the difference between the functions of judges on the one hand and legislators or executive officers on the other, and the citizens' expectations of each, permits the state to prohibit judicial campaign speech about issues that are likely to come before the courts for adjudication.

There are two interrelated compelling interests served by such a restriction: the right of litigants to appear before judges who have not committed themselves to rule one way or another, *i.e.,* the impartiality of the judiciary, and the right of litigants to appear before judges who do not knowingly owe their office to the support of interests or persons antagonistic to them, *i.e.,* the integrity of the judiciary. The state also has an interest in maintaining public confidence in judicial impartiality and integrity, since the perception of judicial partiality and corruption, whether true or not, breeds disrespect for law and extralegal self-help.

There is no Supreme Court precedent addressing permissible restrictions on the speech of judicial candidates, but two cases are instructive. *Gentile v. State Bar of Nevada,* 501 U.S. ——, 111 S.Ct. 2720, 115

L.Ed.2d 888 (1991), addressed the extent to which attorneys' rights of free speech may be abridged by disciplinary rules. The petitioner in *Gentile* was a criminal defense attorney who called a press conference shortly after his client was indicted. At the conference he presented his defense— that the culprit was actually a police detective. After his client was tried and acquitted by a jury that had not been affected by the media coverage, the lawyer was disciplined for violating an ethical rule prohibiting comments on pending proceedings when the attorney reasonably should know that his statements are likely to prejudice the adjudication of the case. The rule had a "safe harbor" provision permitting an attorney to "state without elaboration" "the general nature of the claim or defense."

The Court issued split opinions. Five Justices led by Justice Kennedy found the disciplinary rule void for vagueness because a lawyer could not find the boundary between a permitted general description and a forbidden elaboration. *Id.,* —— U.S. at ——, 111 S.Ct. at 2731, 115 L.Ed.2d at 906–07. However, a different majority of five Justices led by Chief Justice Rehnquist agreed that Nevada could constitutionally restrict an attorney's right to comment on a pending case when there is a "substantial likelihood of material prejudice." —— U.S. at ——, 111 S.Ct. at 2740–45, 115 L.Ed.2d at 920–24.

The Chief Justice reasoned that membership in the bar has historically been regulated and subject to conditions, including a long-standing prohibition of extra-judicial public statements by lawyers that might interfere with a fair trial. Thirty-one states had virtually the same rule as Nevada, and eleven only required a "reasonable likelihood of prejudice." Such extra-judicial statements threaten to undermine the tenet of our criminal justice system which demands impartial jurors who know as little as possible of the case, apart from the evidence admitted at trial. At the same

---

**4.** Although this case involves a constitutional challenge to a judicially enacted disciplinary rule rather than a statute, the parties have not

suggested that the standard is any different and we apply the same analysis.

time the people have the right to know what is going on in the criminal justice system, a right recognized in the Court's prior holdings that only a clear and present danger to the administration of justice justifies a prohibition of media speech or publication.

In contrast, the out of court speech of lawyers participating in a judicial proceeding is subject to ethical restrictions not applicable to other citizens. Even when they are not playing a courtroom role, lawyers, as officers of the court, are not protected by the First Amendment to the same extent as those engaged in other businesses. —— U.S. at ——, 111 S.Ct. at 2743–44, 115 L.Ed.2d at 921–22. Because of their special status in the justice system, the speech of lawyers in pending cases can be restricted to a greater extent than the press in furtherance of the fundamental right to a fair trial. "Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct." —— U.S. at ——, 111 S.Ct. at 2744, 115 L.Ed.2d at 923.

*Gentile* is not controlling, yet an analogy may be drawn. The right to come before a judge who is not already committed to rule in one way or another is as fundamental as the right to be tried by a jury that has not heard out of court arguments or evidence. In our justice system judges, not advocates, embody the central principle of impartiality. Campaign practices which jeopardize the impartiality of judges are a much greater threat to the rule of law and public confidence in the courts than extrajudicial comments by lawyers.

In *United States Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court upheld the Hatch Act ban on political campaigning by federal employees. The Court held that the right to participate in political activities was not absolute, *id.* at 567, 93 S.Ct. at 2891, and that several important interests justified this severe restriction on First Amendment freedoms: executive branch employees' enforcement and execution of the laws without bias or favoritism, avoiding the appearance of such bias or favoritism, preventing the use of the large federal work force to build a powerful political machine, insuring that employment and advancement in the federal service not be tied to political performance, and relieving federal employees from pressure from their superiors to engage in political activity. *Id.* at 565–66, 93 S.Ct. at 2890–91.

Preserving the impartiality and integrity of the judiciary and public confidence in the courts are at least equally deserving of protection. It is fundamental to our republican and constitutional form of government that although the ultimate power to make and abolish any and all laws resides with the people, the power to make and apply laws may only be exercised uniformly and in the manner provided for in the constitution. Judges are politically independent guardians of the constitution. Alexander Hamilton wrote in *The Federalist Papers*:

This independence of the judges is equally requisite to guard the Constitution and the rights of individuals from the effects of those ill humors, which the arts of designing men or the influence of particular conjunctures sometimes disseminate among the people themselves; and which, though they speedily give place to better information and more deliberate reflection, have a tendency, in the meantime, to occasion dangerous innovations in the government, and serious oppressions of the minor party in the community.... Until the people have by some solemn and authoritative act annulled or changed the established form, it is binding upon themselves collectively, as well as individually; and no presumption, or even knowledge, of their sentiments, can warrant their representatives in a departure from it, prior to such an act. But it is easy to see that it would require an uncommon portion of fortitude in the judges to do their duty as faithful guardians of the Constitution, where legislative invasions of it had been instigated by the major voice of the community.

Federalist No. 78, *The Federalist Papers* (Roy P. Fairfield, ed.) (2d ed. 1981) at 231.

The Constitution of the State of Illinois, like the Constitution of the United States, provides that laws are to be made by elected representatives and applied by judges.[5] Unlike United States judges, Illinois judges are elected by the citizens. There is a danger that judges, to secure election, will promise to enforce some laws and not others, or enforce the laws against some persons and not others or deny procedural rights to unpopular defendants. Since judges may be removed by those who elect them, such promises are very likely to be kept.

We think it is clear that the state may properly forbid pledges relating to the disposition of matters that may come before the court. Such pledges are nothing less than promises that the candidate will *not* fulfill the place in the constitutional order assigned to the judiciary; they threaten inconsistent and unpredictable adjudication from judge to judge; they threaten judicial nullification of laws and constitutional guarantees of liberty and due process where these may be unpopular; and they promote the notion that a judge may decide cases as he or she pleases rather than according to the law.

But these concerns go beyond outright promises of conduct in office. With respect to an issue before the courts the difference between a pledge and an expression of a candidate's views is a matter of degree, not kind; a candidate's views on a controversial issue, though not binding as a pledge, give some indication of how the candidate would rule should it come before him. By publicly expressing his views in the course of a campaign, he invites the voters to select him on that basis, and invites his opponents to express their own "views."

Is it not better, Young asks, to maximize the information available to the voters? Why conceal from the electorate the opinions—and prejudices—of judicial candidates? One answer is that such a course does not insure unprejudiced judges, only those whose prejudices are popular ones. A candidate's views—as distinguished from her record, or her published opinions if she is a sitting judge—are not given facts, but may be shaped to suit the occasion. If judicial candidates may freely give their opinions on issues likely to come before them, they will be tempted to articulate opinions they believe to be popular, foreclosing serious consideration in court after hearing reasoned arguments that cannot be presented in campaign flyers or thirty-second paid political announcements.

While the Illinois Constitution provides that judges shall be elected, this does not mean that they must—or should—be elected in the same way as candidates for legislative or executive office, *i.e.*, after campaigns in which they debate the issues they will deal with in office. Judges are chosen to *decide* cases independently, not to act as proxies of the electorate. A candidate for legislative office may, even should, declare what course he or she will pursue. But judges are to decide each case on its facts and the law and judicial candidates should not be put in a position where they may be influenced to act otherwise.

At the time the First Amendment was adopted, it was not the practice for judges to be popularly elected for fixed terms, and the problems presented by campaigning judges were unknown and unanticipated. Following the Revolution, seven states provided for selection of judges by the legislature, five by the governor, and one by both. Glenn R. Winters, *Selection of Judges—An Historical Introduction*, 44 Texas L.Rev. 1081–82 (1966). In most states judges

---

5. This is, of course, simplistic. The Illinois Supreme Court does establish rules governing procedure, court administration, rules of conduct for attorneys and the Code of Judicial Conduct which we consider here. This is understood as internal management of the affairs of the judicial branch and not infringement on the legislative. The Rule permits public discussion of these matters by candidates. There is also judge-made common law which is a form of lawmaking well known to the drafters of the United States Constitution in 1789 and of the Illinois Constitution in 1970 and is compatible with the traditional constitutional separation of powers.

served during good behavior. Joseph H. Smith, *An Independent Judiciary: The Colonial Background*, 124 U.Pa.L.Rev. 1104, 1153–55 (1976). Alexander Hamilton noted in Federalist No. 78 that the practice of retaining judges in office during good behavior is "conformable to the most approved of the State constitutions." The view that judges should serve during good behavior "prevailed in America until about the middle of the last century, when, within a short twenty years, the states of this Union, taken as a whole, abandoned the practice of the rest of the civilized world, and amended their constitutions so as to provide for popular election of judges, to hold office for short terms of years." Evan Haynes, *Selection and Tenure of Judges* 80 (1944). When Illinois became a state in 1818, judges were elected by the General Assembly and served during good behavior; in the constitution of 1848 popular election was adopted for judges. *Id.* at 110.

The legitimacy and authority of judges rests in great part on their being perceived as *not* being chosen on the basis of their views, but on the basis of integrity, humanity, intelligence and knowledge of the law. As a modern commentator puts it,

> Citizens obey court orders that are costly, distasteful, unpopular, painful, and that disrupt their lives. Officials, too, obey and carry out court orders which they disagree with, which go contrary to their convictions, and which they would never have voted into effect themselves, had it been left to them.

> Why do they obey? I think that people obey only because they respect the law and because they are convinced that judges are special, that judges are not political people, like the ones they vote for legislative and executive offices, but are truly *people of the law*.

> \* \* \* \* \* \*

> The great mass of the people think that judges are different, that their special relationship to the law is what makes them different, that they are not merely political authorities, weighing and balancing interests, but legal authorities, guid-

ed and restrained by the law. . . . If judges are stripped of the robes of the law—or if, in the foolish pursuit of political power, strip themselves of the robes of the law—the people will cease to accept the authority of court decisions, law enforcement officers will be less ready to enforce court orders, legislators will be more ready to curb judicial powers, and the judges will wonder where their power went. ·

Robert A. Goldwin in *The Judiciary in a Democratic Society*, L. Theberge ed. (1979) at 19.

Permitting the expression of opinions on matters likely to come before the courts also facilitates corruption. "Corruption is a subversion of the political process. Elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to themselves or infusions of money into their campaigns." *Federal Election Commission v. National Conservative Political Action Committee*, 470 U.S. 480, 497, 105 S.Ct. 1459, 1468, 84 L.Ed.2d 455 (1985). Promises that the judicial candidate will rule in favor of particular interests are likely to loosen purse strings and loose purse strings may induce such promises. Expressions of opinion falling short of pledges or promises can also attract money from those likely to have a stake in matters before the court, presenting the appearance of corruption; conversely, the presence of money may lead to expressions of opinion and the appearance of bias. If, for example, a candidate states that product liability suits are ruining the country's competitive position, attracting large contributions from manufacturers and insurers, a product liability plaintiff will appear before him or her with some trepidation.

Of course, a candidate's views may become widely known apart from campaign activity through publications, speeches, and, in the case of sitting judges, written opinions. Nevertheless, to prohibit candidates from announcing their views within the campaign itself does reduce the likelihood that the campaign will present a spectacle of candidates clamoring for the atten-

tion and donations of powerful persons and groups having interests adjudicated by the courts.

Three Courts of Appeals have recognized that a state's compelling interest in preserving the integrity and impartiality of the judiciary can justify limitations on the campaign speech of judicial candidates. In *Stretton* the Third Circuit upheld as constitutional a provision of the Pennsylvania Code of Judicial conduct identical to the Rule, except that it lacked the Rule's closing proviso. The court held that the state had a compelling interest in the integrity of the judiciary and that limitation of campaign speech served that interest:

> It requires no extended discussion to demonstrate that Pennsylvania's canon serves this interest. If judicial candidates during a campaign prejudge cases that later come before them, the concept of impartial justice becomes a mockery. The ideal of an adjudication reached after a fair hearing, giving due consideration to the arguments and evidence produced by all parties no longer would apply and the confidence of the public in the rule of law would be undermined.
>
> The functioning of the judicial system differs markedly from those of the executive and legislative. In those areas, the public has the right to know the details of the programs that candidates propose to enact into law and administer. Pledges to follow certain paths are not only expected, but are desirable so that voters may make a choice between proposed agendas that affect the public. By contrast, the judicial system is based on the concept of individualized decisions on challenged conduct and interpretations of law enacted by the other branches of government.
>
> \* \* \* \* \* \*
>
> The public has the right to expect that a court will make an assessment of the facts based on the evidence submitted in each case, and that the law will be applied regardless of the personal views of the judge. Taking a position in advance of litigation would inhibit the judge's ability to consider the matter impartially.

> Even if he or she should reach the correct result in a given case, the campaign announcement would leave the impression that, in fact, if not in actuality, the case was prejudged rather than adjudicated through a proper application of the law to facts impartially determined.

944 F.2d at 142, 144.

The court held that the Pennsylvania Supreme Court would give the Rule a narrow construction and construe "disputed legal or political issues" to mean only those issues that are likely to come before the court. Given this reading, the court found the restriction narrowly tailored to serve the state's compelling interest in an impartial judiciary and rejected the plaintiff's claim that it was vague and overly broad. *Id.* at 144.

In *Berger v. Supreme Court of Ohio*, 1988 WL 114792, 1988 U.S.App. LEXIS 14657, 861 F.2d 719 (text not available in F.2d) (6th Cir.1988), the Sixth Circuit upheld a district court decision declining to strike down Ohio's version of the Rule. Again, the Ohio rule was identical to the Rule except for Illinois' proviso. The district court held that the pledges the plaintiff judicial candidate intended to make relating to reforming court procedures and administration did not violate Ohio's Judicial Canon, denied injunctive relief, 598 F.Supp. 69 (S.D.Ohio 1984), and later granted the defendants' motion for summary judgment in an unpublished opinion. Affirming, the Sixth Circuit stated,

> On its face, the Canon does not infringe upon a candidate's first amendment right to free speech because it "does not prohibit criticisms of judicial administrations or incumbents which are not untruthful or misleading." Rather, as the district court noted, "the rule recognizes that judges are frequently called to adjudicate cases squarely presenting social and political issues," and seeks to protect the state's compelling interest in ensuring judicial integrity and impartiality. Since the Canon does not prohibit a judicial candidate from running a truthful, upright and vigorous campaign, we hold

that it does not violate the first amendment on its face.

1988 WL 114792 at *2, 1988 U.S.App. LEXIS 14657 at *5–6 (citations to district court slip opinion omitted). (Copy attached to Board's Resp. Exh. A, Tab C).

The Fifth Circuit, in *Morial v. Judiciary Comm'n of State of Louisiana*, 565 F.2d 295 (5th Cir.1977), upheld a Louisiana statute and canon of judicial ethics that prohibited sitting judges from running for non-judicial elective office. The court found that the state had at least as great an interest in assuring the impartiality of judicial administration of the laws as in assuring the impartiality of bureaucratic administration of the laws, citing *United States Civil Service Commission. Id.* at 302. Finding the statute constitutional, the court rejected an equal-protection challenge to the distinction between holders of judicial office, who were required to resign before seeking non-judicial offices, and other officeholders who were not:

> Because the judicial office is different in key respects form other offices, the state may regulate its judges with the differences in mind. For example, the contours of the judicial function make inappropriate the same kind of particularized pledges of conduct in office that are the very stuff of campaigns for most non-judicial offices.... [A judicial candidate] cannot, consistent with the proper exercise of his judicial powers, bind himself to decide particular cases in order to achieve a given programmatic result....
>
> As one safeguard of the special character of the judicial function, Louisiana's Code of Judicial Conduct bars candidates for judicial office from making "pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office;" [citation] Candidates for non-judicial office

are not subject to such a ban; in the conduct of his campaign for the mayoralty, an erstwhile judge is more free to make promises of post-campaign conduct ... than he would be were he a candidate for re-election to his judgeship. *The state may reasonably conclude that such pledges and promises, though made in the course of a campaign for non-judicial office, might affect or, even more plausibly, appear to affect the post-election conduct of a judge who had returned to the bench following an electoral defeat.*

*Id.* at 305 (emphasis added) (footnotes omitted). If the state can prevent a sitting judge from running for non-judicial office because his engaging in the "very stuff of campaigns for most non-judicial offices"— pledges of future conduct in office—might call into question his impartiality if he *loses*, the state can certainly prevent a candidate for judicial office from making pledges or promises that will impugn his impartiality if he *wins*.[6]

We conclude that a state has compelling interests in preserving the integrity and impartiality of its judiciary and public confidence in the courts. Those interests are directly served by the Rule which prevents a judicial candidate in the course of a campaign from making pledges and promises relating to matters that are likely to come before the courts, and expressing views on such matters that cast doubt on his or her ability to decide cases impartially.

## VII. Construing the Rule

We next address the key question about the scope of the Rule, whether, as Buckley and Young contend, the disputed issues provision is to be read literally, in which case it bars all discussion by judicial candidates of any disputed legal or political is-

---

**6.** In substance, at least four state supreme courts have found the interest in preserving the integrity of the judiciary to be compelling. *J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953, 956 (Ky. 1991); *In re Fadeley*, 310 Or. 548, 802 P.2d 31, 41–44 (1990); *In re Kaiser*, 111 Wash.2d 275, 759 P.2d 392, 399 (1988); *In re Randolph*, 101 N.J. 425, 502 A.2d 533 (1986). See also *Ackerson*, 776 F.Supp. at 313, and *Clements v. Fash-*

*ing*, 457 U.S. 957, 968 n. 5, 102 S.Ct. 2836, 2846 n. 5, 73 L.Ed.2d 508 (1982) ("[t]he State's particular interest in maintaining the integrity of the judicial system could support § 19 [prohibiting incumbent Justices of the Peace from running for the legislature], even if such a restriction could not survive constitutional scrutiny with regard to any other officeholder.")

sue or whether, as the Board and ARDC argue, it should be given a narrowing construction and limited to issues that are likely to come before the courts. The Board has not undertaken to limit prosecutions under the disputed issues provision to those justified under this limited construction. Nevertheless, if we, as a federal court, believe the Commission and the Illinois Supreme Court would construe an enactment in a certain way, we are required to follow that construction. Moreover, a state statute should not be held to be facially invalid if it is readily susceptible to a narrowing construction that would make it constitutional, although the court should not rewrite the statute to conform to constitutional requirements. *Virgina v. American Booksellers Association*, 484 U.S. at 397, 108 S.Ct. at 645.

A formal difficulty arises in that, as we noted above, the power to construe the Rule lies with the Commission. This suggests that in ascertaining state law with respect to rules of judicial conduct we must predict how the Commission would rule. But while the Commission is empowered to construe the Rule, there is some doubt whether it is empowered to apply the First Amendment to it. In *People ex rel. Harrod v. Illinois Courts Commission*, 69 Ill.2d 445, 14 Ill.Dec. 248, 372 N.E.2d 53 (1977), the Illinois Supreme Court determined that the Commission is not a judicial body and therefore had no power to construe a state statute in determining whether a judge should be disciplined for acting contrary to that statute. 14 Ill.Dec. at 260–61, 372 N.E.2d at 65–66. On that reasoning, the Commission would have no power to determine whether the Rule clashes with the First Amendment.

But even if the Commission could not or would not *strike down* a portion of the Rule as unconstitutional, it could still *interpret* it so as to avoid constitutional difficulties. And if it did not, the Illinois Supreme Court has the power, by write of prohibition, to restrain the Commission within constitutional bounds by vacating its disciplinary rulings if they unconstitutionally penalize protected speech. *Harrod,* supra; see *Orenic v. Illinois State Labor Relations Board,* 127 Ill.2d 453, 130 Ill.Dec. 455, 462–64, 537 N.E.2d 784, 791–93 (1989). So although the Commission may lack judicial competence to pass on the constitutionality of the Rule, we think it would probably construe the Rule with a view to maintaining its constitutionality, keeping in mind the Illinois Supreme Court's practice of construing statutes so as to preserve their constitutionality, provided the construction is a reasonable one. *People v. Geever,* 122 Ill.2d 313, 119 Ill.Dec. 341, 346, 522 N.E.2d 1200, 1205 (1988).

Limiting the disputed issues provision to issues that are likely to come before the courts is consistent with the dominant purpose of the Rule, to protect the impartiality of the courts. This purpose is reflected in the language of the Rule and emphasized in the proviso which states that a candidate "may announce his views on measures to improve the law, the legal system, or the administration of justice, if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him." Our interpretation also follows Rule 61 which instructs that the provisions of the Code should be construed and applied to preserve the integrity and independence of the judiciary.

The proviso follows the wording of ABA Canon 4A and Illinois Supreme Court Rule 64, which states:

"A judge, subject to the proper performance of his judicial duties, may engage in the following law-related [ABA: quasi-judicial] activities, if in doing so he does not cast doubt on his capacity to decide impartially any issue that may come before him.

A. He may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

\* \* \* \* \* \*

Commenting on the ABA Canon, the ABA reporter writes:

Canon 4 sets standards for the judge's quasi-judicial activities.... A judge's obligation of office is to be available to fulfill his judicial duties; he must avoid

quasi judicial activities that are likely to lead to his disqualification. [citation]

The line ... is not as difficult to draw as may first appear. For example, a judge may write or lecture on a legal issue ... he may commend the present law or propose legal reform without compromising his capacity to decide impartially the very issue on which he has spoken or written. There is a significant difference between the statement, "I will grant all divorce actions that come before me—whatever the strength of the evidence to support the statutory ground for divorce—because I believe that persons who no longer live in harmony should be divorced," and the statement, "I believe that limited statutory grounds for divorce are not in the public interest. The law should be changed to allow persons who no longer live in harmony to obtain a divorce." The latter does not compromise a judge's capacity to apply impartially the law as written, although it clearly states his position about improvements in the law.

Reporter's Notes at 74.

The proviso clearly qualifies the disputed issues provision and strongly supports the narrowing interpretation argued here, which is the same narrowing interpretation adopted by the Third Circuit in *Stretton* for the Pennsylvania rule. Indeed, the case for this limiting construction is stronger here than it was in *Stretton*, which interpreted a Pennsylvania rule lacking any counterpart to the Illinois proviso.

We conclude that the Illinois Supreme Court and the Commission would interpret "disputed legal and political issues" to mean issues that are likely to come before the courts. For the reasons already discussed we also conclude that the Rule is readily susceptible to such a construction.

### VIII. The Constitutionality of the Rule as Applied

#### A. The Rule As Applied to Buckley

Buckley does not seriously argue that his statement that he had never authored an opinion reversing a rape conviction is not a pledge or promise. In his brief to the Commission he referred to this statement as "certain information about rulings that Respondent has made ... as an Appellate Court justice and statements of matters which are of public record." Buckley Commission Br. at 11, Exh. F to Buckley Mo. for Prelim.Inj. In his testimony before the Commission, Buckley denied that he had pledged to do anything other than deliver justice impartially. Transcript of Proceedings of August 16, 1991 at 58, Exh. C to Buckley Mo. for Prelim.Inj.

We agree with the Commission that Buckley's statement, made in a political advertisement, amounted to an implicit pledge that Buckley would not reverse rape convictions, or at least would be particularly reluctant to do so. That Buckley has never written an opinion reversing a rape conviction, of course, does not mean that Buckley ever judged rape cases other than in accordance with the law and no one suggests that he has. It is the use of that fact in campaign advertising that is improper. Voters naturally judge political candidates on their records, and it is understood that candidates will seek to impress voters with the good things they have done, implying that they will do more of the same if elected.

The statements made in a political pamphlet are selected with care and with attention to their implications and impact. Voters know this; they know they are being given the punch line the candidate wants them to hear, not casually interesting statistics. No reader would reasonably infer that Buckley intended to advertise his lack of experience with rape cases. His statement was an implied promise to deal harshly with rapists, and perhaps other criminals.

In finding that Buckley violated the Rule, the Commission quoted *In re Kaiser*, 111 Wash.2d 275, 759 P.2d 392, 396 (1988), holding that the respondent's pledge that he would be "tough on drunk driving" was a "promise exactly the opposite of impartial performance of the duties of the office." We agree that Buckley's statement was an implied pledge or promise, and that

a reasonable person would have recognized it as such.

It was also a pledge or promise the state can constitutionally forbid. To be sure, Buckley did not promise to decide a particular case in a particular way. But he did implicitly promise to decide a *kind* of case—appeals from rape convictions—in a particular way. It is certainly possible that an honest and conscientious judge could truthfully make the statement Buckley made. But made while electioneering, it is reasonably taken as a pledge of future conduct in office.

Buckley's pledge is the kind that undermines confidence in judicial impartiality. The pledges and promises provision of the Rule is aimed directly at such pledges. That provision reaches no farther than the conduct the state is entitled to prevent. The pledges and promises provision is not unconstitutional as applied to Buckley. We do not address his equal protection claim or his attack on Rules 61 and 62 as applied since he has offered no argument in support of those claims.

### B. The Rule As Applied to Young

Young contends that the state's interest is less weighty with respect to judicial candidates who are not currently sitting judges and that as applied to such individuals, the Rule does not effectively serve the state's interest in an impartial judiciary because it is unrelated to how a candidate, if elected, would behave in office. True, campaign speech reflecting adversely upon the impartiality of candidates who are sitting judges is an immediate threat since it may affect pending cases. But restrictions on such speech also serve the state's interest as to candidates who are not sitting judges. It is obvious that campaign statements on the issues likely to come before the courts are likely to influence rulings on those issues by candidates who are elected. And public confidence in the courts will be weakened by such campaign speech by non-judge candidates, even if they are not elected, since it encourages a referendum on controversial issues which is wholly inappropriate in judicial elections.

The evil the Rule seeks to avoid is the election of judges based on rulings they promise to make in office; it is therefore the conduct of the candidate *qua* candidate, not *qua* judge, that is addressed. Finally, to permit a non-judge challenger to discuss topics that are off-limits to an incumbent judge candidate would be manifestly unfair.

Young also contends that because he has a duty to discuss controversial issues in his capacity as a legislator and community leader, the Rule may not constitutionally be applied to him, although it might be applied to other judicial candidates. We disagree. The First Amendment applies to all, officeholders, candidates, leaders and ordinary citizens. Other than the Speech and Debate clause, which applies only to members of Congress, the Constitution does not grant favored status to speech of legislators or community leaders. The duty of a legislator to speak his mind is a moral not a legal duty. Young chose to be a judicial candidate and thus brought upon himself any consequent limitations on his campaign speech. If the burdens of being a judicial candidate unduly interfere with his activities as a legislator, he is not compelled to continue to be a legislator. *Morial* held that a sitting judge can constitutionally be required to resign his office before running for political or executive office. Accord, *Clements v. Fashing*, 457 U.S. 957, 968 & n. 5, 102 S.Ct. 2836, 2846 & n. 5, 73 L.Ed.2d 508 (1982). That Illinois law does not require Young to resign before running for judicial office does not mean that it cannot impose otherwise reasonable limitations upon his speech when he does run.

### IX. Facial Challenges to the Rule

#### A. Vagueness—Pledges and Promises Provision

Buckley and the IJA claim the pledges and promises provision is unconstitutionally vague in that a reasonable person could not know what is forbidden and what is not, and that it is overbroad, *i.e.*, it forbids speech beyond the scope of the state's compelling interest. These concepts are interdependent; if it cannot be determined what

is forbidden, it is likely that speech protected by the First Amendment will be suppressed, either by self-censorship on the part of cautious speakers or by discriminatory enforcement. See *Gentile*, —— U.S. ——, 111 S.Ct. at 2732, 115 L.Ed.2d at 908.

We address vagueness first. The IJA argues that "a judicial candidate must necessarily guess whether any self-promotional statement other than the exact verbatim promise set forth in the rules ("the faithful and impartial administration of justice") falls within the undefined scope of the clause. For example, a candidate who pledges to vigorously enforce the disciplinary rules does so at the peril of an arbitrary or capricious interpretation of his statement as something beyond a pledge of the faithful and impartial administration of justice." IJA Br. at 4.

The possibility that somebody might "arbitrarily and capriciously" decide that protected conduct is prohibited is not grounds for invalidating a statute. A statute forbidding citizens to keep dangerous animals is not invalid because the dogcatcher might bring in a Pekingese. The danger presented by a vague statute is that we may not be able to *tell* whether it is being arbitrarily enforced. "The question is ... whether the Rule is so imprecise that discriminatory enforcement is a real possibility." *Gentile*, —— U.S. ——, 111 S.Ct. at 2732, 115 L.Ed.2d at 908.

All that is required is that a person of ordinary intelligence be given a reasonable opportunity to know what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Although stricter standards of permissible statutory vagueness may be applied to a statute inhibiting speech, *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976), we do not think the pledges or promises provision is unconstitutionally vague.

Contrary to plaintiffs' contention, the pledges or promises provision does not limit a candidate to parroting the words "I pledge faithful and impartial performance of my duties." Let us look again at the Rule:

[A candidate] should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position, or other fact, provided, however, that he may announce his views on measures to improve the law, the legal system, or the administration of justice, if, in doing so, he does not cast doubt on his capacity to decide impartially any issue that may come before him.

The proviso that a candidate may announce his views on measures to improve the law, the legal system or the administration of justice applies to the pledges or promises provision as well as the disputed issues provision. (It would make no sense if it were to modify only the misrepresentation clause which it follows.) If measures to improve the law, the legal system or the administration of justice involve administrative matters lying within the judge's power to implement, the reasonable conclusion is that he may pledge to implement them. Thus pledges to encourage mediation, avoid unnecessary continuances, avoid inconveniencing victims and witnesses, and a host of similar pledges would all be permissible.

We believe a candidate is able to determine when he or she is making a forbidden pledge or promise of conduct in office. A candidate should be able to ascertain whether the pledge is something reasonably encompassed in the faithful and impartial execution of the duties of the office, and if not, whether the proposed pledge or promise falls within "measures to improve the law, the legal system, or the administration of justice."

If the subject matter of the pledge or promise is permissible, only then must the candidate ask whether the statement would cast doubt on the candidate's capacity to impartially decide any issue that might come before him or her on the bench. If the pledge concerns an issue that is likely to come before the courts for adjudication, a pledge to decide that issue in a certain

way can be expected to cast doubt on the candidate's impartiality and he or she should refrain from making it.

We believe a person of average intelligence can determine what is and is not forbidden by the pledges or promises provision of the Rule and that it is therefore not vague. "[E]nactments need not provide 'meticulous specifics' or mathematical precision; they are permitted 'flexibility and reasonable breadth.'" *Berg v. Health and Hospital Corporation of Marion County, Indiana,* 865 F.2d 797, 805 (7th Cir.1989) (quoting *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2299). Judicial candidates in Illinois are required to be lawyers, and this is precisely the kind of analysis lawyers (and judges) are expected to make every day.[7]

B. Overbreadth—Pledges and Promises Provision

Although Buckley's speech can be constitutionally forbidden by a properly drawn rule, the Rule may nevertheless be struck down if it is substantially overbroad. The First Amendment needs breathing space; statutes which restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. In First Amendment cases the Supreme Court has altered its traditional rules of standing to permit attacks on overly broad statutes even though the plaintiff's own conduct could be regulated by a statute drawn with the requisite narrow specificity. A litigant may therefore challenge a statute not because his own rights of free expression have been violated, but because the statute may cause others not before the court to refrain from constitutionally protected expression. *Broadrick v. Oklahoma,* 413 U.S. 601, 611–612, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973).

Invalidating a statute for overbreadth is "strong medicine" to be employed sparingly. *Id.* at 613, 93 S.Ct. at 2916. The over-

breadth must be substantial. *Id.* at 615, 93 S.Ct. at 2917; *Berg,* 865 F.2d at 804. "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984).

Buckley has failed to persuade us that the pledges or promises portion of the Rule is overbroad. By its terms the provision is limited to pledges and promises of conduct in office. Neither Buckley nor the IJA has offered an example of a pledge or promise forbidden by the Rule that would not implicate the state's compelling interest in protecting both the actual and perceived integrity of the judiciary. The concluding proviso of the Rule distinguishes it from the rule of judicial conduct addressed in *Ackerson v. Kentucky Judicial Retirement and Removal Commission,* 776 F.Supp. 309, in which the court found a canon of judicial ethics overbroad because it unnecessarily prevented a candidate from discussing improvements in court administration. Buckley has not shown that any speech is unnecessarily affected by the pledges or promises provision, much less that it is substantially overbroad.

C. Overbreadth and Vagueness—Disputed Issues Provision

If we are correct that the Illinois Supreme Court or the Courts Commission would limit the disputed issues provision to issues likely to come before the courts, that provision is narrowly tailored to protect the state's compelling interests in protecting judicial impartiality and integrity. It is not substantially overbroad. Nor is it vague. A lawyer running for judge should be able to determine whether an issue is likely to come before the courts.

---

7. Some courts have stated that the real purpose of the vagueness doctrine is to limit prosecutorial discretion rather than to assure adequate notice, since few people consult statutes before acting. *Kucharek v. Hanaway,* 902 F.2d 513, 518 (7th Cir.1990). However, in the case of a rule applicable only to judges and would-be judges, it is realistic to expect them to read it.

Young suggests that there is uncertainty as to what are disputed issues. Does the phrase include legal issues upon which the appellate courts have ruled decisively? Under the construction we have given it, "disputed issues" embrace any issue likely to come before the courts for adjudication. This is not limited to issues decided in the appellate courts. Lawyers know that there is almost always room for argument about the scope of an appellate decision, not to speak of the questions which crop up when the time comes to apply rules of law to specific facts. The answer is that matters that come before the courts for adjudication are off limits for judicial campaign speech unless they fall within the proviso. This is confining, but it is not vague. It is as precise as the subject matter permits. As the court said in *Ackerson*, 776 F.Supp. at 315,

> If a judicial candidate is unable to gauge the likelihood of an issue coming before his court, and is therefore constrained by caution so as to avoid making a pre-election commitment with respect to such an issue, we believe this constraint on First Amendment speech is permissible and proper when balanced against the necessity of maintaining the impartiality of the legal process. This interest is simply too great to allow judicial campaigns to degenerate into a contest of which candidate can make more commitments to the electorate on legal issues likely to come before him or her.

Plaintiffs' rely on cases which have struck down other provisions similar to the Rule, *Beshear v. Butt*, 773 F.Supp. 1229 (E.D.Ark.1991), *American Civil Liberties Union v. The Florida Bar*, 744 F.Supp. 1094 (N.D.Fla.1990) (granting preliminary injunction barring enforcement), and *J.C.J.D. v. R.J.C.R.*, 803 S.W.2d 953 (Ky. 1991). These cases did not consider a narrowing interpretation of the Rule. Moreover, they proceeded on the premise that there is, or should be, no distinction in principle between campaigns to elect judges and to elect legislators and that the more information the voters have about the opinions of judicial candidates the better

they will be able to select them. The court said in *J.C.J.D*, 803 S.W.2d at 956:

> It should be noted that Kentucky's Constitution provides for the selection of its judiciary by popular election. [citation and footnote omitted] Accordingly, "we ... must recognize the candidates' right to make campaign speeches and the concomitant right of the public to be informed about the judicial candidates." *American Civil Liberties Union, supra,* at [744 F.Supp.] 1097. ... Inasmuch as the purpose of an election is to give the electorate the opportunity to become informed on a judicial candidate's qualifications for the position, which would include, among other things, knowledge of the law, and personal views and beliefs, the Canon fails in this respect. Instead, we are encouraging the public to judge candidates for our judiciary by not much more than their personal appearances. We believe a well informed electorate is essential to the democratic election process. ... The rights of the voting public to hear what a candidate has to say is a compelling one. We further believe candidates for judicial office can announce their views on legal and political issues without jeopardizing the integrity and independence of the legal system or undermining the impartiality of the judiciary.

See also Judge Reinhardt's concurrence in *Geary v. Renne*, 911 F.2d 280, 294 (9th Cir.1990), vacated *sub nom. Renne v. Geary*, 501 U.S. ——, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). ("The State of California cannot have it both ways. If it wants to elect its judges, it cannot deprive its citizens of a full and robust election debate.")

We respectfully disagree. Voters are entitled to know what sort of person a judicial candidate is, and that may include knowing some of his views and opinions. Nevertheless, we cannot agree that a judicial candidate's views on issues that are likely to come before him are part of his "qualifications for the position." If the voting public has a right to hear what a candidate has to say, litigants have a no less compelling right to appear before a judge who has not

used his views about issues in their cases to solicit votes and financial support.

Both *J.C.J.D.* and *American Civil Liberties Union* relied in part on cases such as *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), striking down disciplinary rules forbidding attorney advertising. See *American Civil Liberties Union*, 744 F.Supp. at 1098, *J.C.J.D.*, 803 S.W.2d at 957. We find the analogy inapt. When an attorney advertises, he or she is seeking to be hired by a client as a personal advocate. As long as the advertising is not false or misleading, information that will help clients find qualified and vigorous advocates is a good thing. It benefits both clients and society by assisting potential clients in locating the best lawyers their money can hire. But a judge is not elected to be an advocate for the majority that elects the judge, nor for those who supported the judge's campaign. A judge should be elected on the basis of how he or she *goes about* deciding—character, temperament, and legal knowledge—not what he or she will decide.

Young contends that the Rule is not the least restrictive means of furthering the State's interest. Young suggests that the Board could "aggressively seek the removal of judges whose rulings or other conduct demonstrate their lack of objectivity or their refusal to abide by precedent," by applying Supreme Court Rule 63A(1); "[a] judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism." Young Br. at 16.

A content-based restriction on speech is not sufficiently narrowly drawn if a less restrictive alternative is readily available, *Boos v. Barry*, 485 U.S. 312, 329, 108 S.Ct. 1157, 1168, 99 L.Ed.2d 333 (1988). But Young's proffered alternative is unrealistic. The rule he cites is impossible to enforce except in the most egregious cases. How is the Board to prove a judge has been swayed by partisan interests or fear of criticism without reading his mind? In any event, such enforcement would do nothing for the appearance of partiality engendered by candidates' taking positions on disputed issues in their campaigns. It cannot substitute for the Rule.

Plaintiffs and courts which have struck down restrictions similar to the Rule ask how voters can make informed choices in judicial elections if the candidates are not allowed to disclose their views. "Informed choices" in this setting readily translates into voter referenda on the controversies of the day, remembering De Tocqueville's dictum, "There is hardly a political question in the United States which does not sooner or later turn into a judicial one." A. De Tocqueville, *Democracy in America* 270 (Lawrence translation, Anchor Books 1969). We are not persuaded that voters are incapacitated by the long-standing restrictions on judicial campaign speech reflected in the Rule. Those restrictions leave open for voter education and choice the candidates' experience, knowledge of the law and character as well as their proposals for improving judicial administration. Nor are we persuaded that in choosing to elect its judges Illinois intended to sacrifice the values of judicial impartiality and integrity which are so central to our legal heritage.

## X. Conclusion

### Summary Judgment for Defendants?

We conclude that the plaintiffs in neither action have demonstrated that the Rule is unconstitutional and the summary judgment motions in both cases should be denied. Because this is a pure issue of law and there are no disputed facts, summary judgment for the defendants is appropriate, even though the defendants have not so moved. Summary judgment for the defendants is appropriate even in the absence of a motion if the plaintiffs have had a full and fair opportunity to present material evidence and litigate the issues. See 6 *Moore's Federal Practice* ¶ 56.12 (1992). Because of the importance of the issues presented here, the plaintiffs can be expected to appeal an adverse ruling. Entering summary judgment for the defendants will permit a prompt appeal to the Court of Appeals.

We grant the IJA's motion to intervene in 91 C 7635. However, the IJA has not

presented a ripe case or controversy and accordingly we recommend that its motion for summary judgment be denied. Buckley presents a ripe controversy only with respect to the pledges or promises portion of the Rule, and therefore the disputed issues provision is not considered. Buckley and the IJA have not persuaded the court that the pledges or promises provision is unconstitutionally vague or overbroad or that the Commission's Order represents an unconstitutional application of the Rule to Buckley. We recommend that Buckley's summary judgment motion be denied and that summary judgment be entered in favor of the defendants.

We conclude that Young has not shown a ripe controversy with respect to the pledges or promises provision but has done so with respect to the disputed issues provision. We construe "disputed legal or political issues" to mean disputed issues that are likely to come before the courts for adjudication, and, so construed, we find the disputed issues provision narrowly tailored and not vague. We further conclude that it is not unconstitutional to apply the provision to Young, even though he is not a sitting judge and is a legislator and community leader as well as a candidate for judicial office. Therefore we recommend that Young's summary judgment motion be denied and that summary judgment be entered in favor of the defendants.

Under 28 U.S.C. § 636(b)(1) the parties have 10 days from the date of service hereof to file written objections to this Report and Recommendation with Judge Alesia. Failure to file such objections will normally waive the right to appeal the rulings set forth in this Report. *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir.1990).

Respectfully submitted,
/s/ Bernard Weisberg
Bernard Weisberg
United States Magistrate Judge

Date: April 23, 1992